631 A.2d 739

**LANCASTER LABORATORIES, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 17, 1993.

Decided Aug. 24, 1993.

166

Russell J. Ober, Jr., for petitioner.

Bart J. DeLuca, Jr., Sr. Deputy Atty. Gen., for respondent.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

Lancaster Laboratories Inc. (Lancaster) appeals from an order of the Board of Finance and Revenue (Board), dated March 29, 1988, that sustained a Board of Appeals' decision denying Lancaster's petition for resettlement of the Department of Revenue's (Department) initial resettlement, in the nature of an increase, of Lancaster's 1984–85 capital stock tax from $4,291.59 to $18,108.13. The Board based its order on the grounds that Lancaster is not entitled to claim the manufacturing or the research and development exemption set forth under Section 602(a) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7602(a), because it is primarily engaged in the testing of products and manufacturing methods of others rather than creating new products or refining products.

The issues presented for our review are (1) whether Lancaster is entitled to the capital stock tax exemption for research

or development; (2) whether Lancaster is entitled to the capital stock tax exemption as a manufacturer; and (3) whether Lancaster is entitled to a capital stock tax exemption based upon the exempt activities of its clients. We affirm.

As findings we adopt the relevant facts as stipulated by the parties. In summary, the parties agree that Lancaster is engaged in the business of providing scientific analyses, studies and/or testing services for its clients. Lancaster's operations typically involve the receipt of one or more samples from a client, which samples are subjected to a test or series of tests. The data generated from the tests, analyses of that data, and transmittal of that data are in the form of a report. Examples of the types of samples Lancaster receives from a client include prepared food products such as a candy bar; semi-prepared food products such as dry cake mix; raw materials to be used in the manufacturing process such as cocoa beans; animal feed products; drugs; manufacturing by-products such as waste water; air or potable water samples; or materials such as wood or metals.

Lancaster receives with the sample a request that it be tested for the presence or absence of certain elements, compounds, pollutants, or biological contaminants. Lancaster may also, for example, be requested to test the absorption rate of a drug; the presence or absence of asbestos in an air or water sample or the amount of certain nutrients or calories in a food product. Lancaster then identifies the samples, inputs information regarding the sample into its computer system; and stores the sample until it can be tested. The storage normally lasts from several hours to several days, although it may be tested immediately. Once the sample is removed from storage, it is taken to one of Lancaster's six departments. These departments are: Chemistry I (Food and Drug), which performs analyses for drug potency, comprehensive nutritional labeling analyses for food products and miscellaneous food analyses; Chemistry II (Water Quality), which involves verification of the efficiency of pollution control and treatment equipment and facilities; Chemistry (Industrial Hygiene), which performs primarily asbestos testing and studies of

building materials; Chemistry IV (Organic Chemistry), which tests solid and liquid waste materials for heavy metals; Chemistry V (Organic Chemistry), which tests water or waste materials for the presence of various organic compounds; and Microbiology, which conducts studies to ascertain the presence of bacterial or extraneous matter in food products.

The respective departments then use Lancaster's equipment and computers to subject the samples to an integrated series of operations or procedures, exposing them to various chemicals, light, heat or other elements. These operations produce data regarding the samples. Upon completion of the analyses, Lancaster provides the client with a report containing the information requested.

Lancaster filed a tax return for the period of October 1, 1984, through September 30, 1985, reporting a capital stock tax of $4,291.59. The Department subsequently resettled Lancaster's capital stock tax at $18,108.13. Lancaster then filed a petition for resettlement alleging that its operations were within the scope of the manufacturing and research and development exemption. The Board of Appeals and thereafter the Board of Finance and Revenue rejected Lancaster's arguments. Lancaster appeals.

The capital stock tax imposed by Section 602(a) of the Tax Reform Code, 72 P.S. § 7602(a) applies to "every domestic entity" as defined in Section 601(a):

Every corporation having capital stock, every joint-stock association, limited partnership and every company whatsoever, now or hereafter organized or incorporated by or under any laws of the Commonwealth, other than corporations of the first class, nonprofit corporations and cooperative agricultural associations not having capital stock and not conducted for profit, banks, savings institutions, title insurance or trust companies, building and loan associations and insurance companies is a domestic entity.

72 P.S. § 7601(a).

 Clearly Lancaster qualifies as a domestic entity under Section 601(a) and is subject to the capital stock tax.

However, Lancaster bases its claims for an exemption upon the following language in Section 602(a):

> [T]he provisions of this section [capital stock tax] shall not apply to the taxation of the capital stock of entities organized for manufacturing, processing, research or development purposes, which is invested in and actually and exclusively employed in carrying on manufacturing, processing, research or development within this State.

72 P.S. § 7602(a). Before examining Lancaster's arguments, we note that the above manufacturing and research and development provisions are *exemptions* to the capital stock tax and are to be strictly construed against the taxpayer.[1] *Commonwealth v. Deitch Co.,* 449 Pa. 88, 95, 295 A.2d 834, 838 (1972).

■ Lancaster's first contention is that it is entitled to a "research and development" exemption to the capital stock tax. In Section 601(a) research and development is defined as, "The activities relating to the discovery of new and the refinement of known substances, products, processes, theories and ideas, but not including activities directed primarily to the accumulation or analysis of commercial, financial or mercantile data." 72 P.S. § 7601(a). Lancaster argues that it is engaged by its clients to assist them in the development of either new and improved products or new methods of production of existing products. As the parties note, there is a dearth of legal precedent interpreting the research and development exemption to the capital stock tax.

Our review of the stipulated facts indicates that Lancaster's activities do not constitute research and development as envi-

1. In its brief, Lancaster refers to the provisions in question as exclusions rather than exemptions. The difference is significant because exclusions are never within the taxing statute in the first place while exemptions are initially within the taxing statute but are subsequently removed by statute. As a result, exemptions are construed against the taxpayer while exclusions are construed in favor of the taxpayer. The provisions in question have been consistently treated as exemptions. *See Stewart Honeybee Products v. Commonwealth,* 525 Pa. 222, 579 A.2d 872 (1990), and *Suburban Cable TV Co. v. Commonwealth,* 131 Pa.Commonwealth Ct. 368, 570 A.2d 601 (1990), *affirmed per curiam,* 527 Pa. 364, 591 A.2d 1054 (1991).

sioned by the legislature in drafting Section 601(a). Lancaster receives samples from its customers and tests the samples for the presence of various elements, compounds or pollutants. Lancaster then reports its analyses to its clients. Lancaster does not research or develop any products. In other words, Lancaster is purely a testing laboratory. Consequently, we conclude that Lancaster is not entitled to the research and development exemption in Section 602(a).

Lancaster's second contention is that if it is not engaged in research and development, it is surely engaged in manufacturing activities and is therefore entitled to the capital stock tax exemption on that basis. Although "manufacturing" is not defined either in Section 601(a) of the Tax Reform Code or in the Department's regulations, this Court in *Kirks Milk Products Inc. v. Commonwealth*, 58 Pa.Commonwealth Ct. 230, 427 A.2d 688 (1981), defined "manufacturing" for purposes of the capital stock tax exemption in Section 602(a). In *Kirks Milk Products* we established a two-prong test to determine whether an activity is manufacturing. First, the taxpayer's operations must involve a high degree of skill, science and labor, and second, there must be a substantial change in the form, qualities and adaptability in the use of the original ingredients so as to create a new, different and useful product. *Id.* at 234, 427 A.2d at 690 (citing *Armour and Co. v. City of Pittsburgh*, 363 Pa. 109, 116, 69 A.2d 405, 408–09 (1949)).

It is undisputed that Lancaster's activities utilize a high degree of science and skilled labor. However, Lancaster does not produce a product. In *Lancaster Laboratories Inc. v. Commonwealth*, 148 Pa.Commonwealth Ct. 465, 611 A.2d 815 (1992) (*Lancaster II* ), we reviewed Lancaster's claim for a sales and use tax exclusion based upon manufacturing. We concluded that Lancaster's activities do not create a product, "[b]ecause the components resulting from Lancaster's breakdown of client-provided samples are not sold to or used by Lancaster or its clients, consumers or another manufacturer, Lancaster's activities do not fall within the manufacturing exclusion...." *Id.* at 469, 611 A.2d at 817. Furthermore, the

production of a written report is only a written analysis of client-produced property and a description of the process and results obtained. *Id.* A written report is *"not* a successor product of the analyzed product derived from a 'transformation' of the latter." *Id.* (Emphasis added.)

Although our analysis of Lancaster's activities in *Lancaster II* was for purposes of the sales and use tax exclusion, rather than the capital stock tax exemption, the rationale is equally applicable in the present case. In short, Lancaster is not engaged in manufacturing because it does not produce a product. Consequently, Lancaster is not entitled to the manufacturing exemption in Section 602(a).

■ Lancaster's third contention is that if it is not entitled to the manufacturing or research and development exemption to the capital stock tax based on its own activities, it is entitled to an exemption based on the manufacturing and research and development activities of its clients. Lancaster relies on our Supreme Court's interpretations of the sales and use tax in *Commonwealth v. R.G. Johnson,* 495 Pa. 256, 433 A.2d 465 (1981) and of the business privilege tax in *Harsco Corp. v. City of Pittsburgh,* 516 Pa. 562, 533 A.2d 1012 (1987). In *R.G. Johnson* the Court extended the manufacturing exclusion for coal mining to a company which sank ventilation shafts for another company that actually mined the coal. In *R.G. Johnson* the Court noted that it is not the identity of the party who performs the work, but the nature of the work done that should control the allocation or denial of the exclusion.[2] 495 Pa. at 260, 433 A.2d at 468. The Court then noted that the two operations were "inextricably intertwined." *Id.* The Court further observed that an "active causal relationship" existed between the ventilation of the coal seams and the production of the mined product." *Id.* at 261, 433 A.2d at 468. In *Harsco* the Court extended a processing exemption to a company that extracts metals from a manufacturer's molten slag. 516 Pa. at 568, 533 A.2d at 1014. Lancaster argues that

**2.** In *R.G. Johnson,* the Court construed the sales and use tax *exclusion* rather than the capital stock tax *exemption.*

this rationale should be extended to the capital stock tax exemption.

However, the Supreme Court has interpreted the manufacturing exemption to the capital stock tax differently from the manufacturing exclusion to the sales and use tax. In *Commonwealth v. Williamsport Rail Co.*, 250 Pa. 596, 95 A. 795 (1915), a taxpayer/company, which was exclusively engaged in the purchase of raw materials for use by another company that manufactured steel rails, claimed a manufacturing exemption from capital stock taxation. The Court denied the exemption, noting:

> In the present case it is clearly shown by the testimony of the officers of the defendant company that no part of its capital stock is invested in a manufacturing plant, and that no part thereof is actually employed in doing the business of manufacturing. Buying raw materials and sending the same to a company owning a plant, and paying that company an agreed price to shape the raw materials into a manufactured product is not carrying on the business of manufacturing within the State as contemplated by our laws. The Sweets Steel Company, which turned the raw material purchased by the defendant company into the desired manufactured product doubtless obtained exemption from tax upon so much of its capital stock as was actually invested and used in its plant and manufacturing business, and to allow a like exemption to the defendant company upon the theory that it also manufactured the product which was sold by it would be granting an exemption not contemplated by our laws. The entire capital of the defendant company was employed in the purchasing of raw material and paying another corporation for manufacturing the raw material into the rails and other product, which the defendant desired to sell.

*Id.* at 598, 95 A. at 797. Support for this interpretation of Section 602(a) is found in its very language: "[T]his section shall not apply to the capital stock of entities organized for manufacturing, processing, research or development purposes, *which is invested in and actually and exclusively employed* in

carrying on manufacturing, processing, research or development within this State." 72 P.S. § 7602(a) (emphasis added). In comparison, no such language exists in the manufacturing exclusion to the sales and use tax interpreted by the Supreme Court in *R.G. Johnson*. Furthermore, the Department's regulations only exempt property from the capital stock tax if the taxpayer's assets "are actually and exclusively employed in manufacturing, processing or research and development in this Commonwealth." 61 Pa.Code § 155.10(d)(3)(i). Accordingly, we conclude that Lancaster, whose assets are not invested in either manufacturing or research and development, is not entitled to a capital stock tax exemption based on the activities of its clients.

The order of the Board of Finance and Revenue, which resettled Lancaster's capital stock tax at $18,101.13, is affirmed.

## ORDER

AND NOW, this 24th day of August, 1993, the order of the Board of Finance and Revenue, which resettled Lancaster's capital stock tax at $18,101.13, is affirmed, subject to the filing of exceptions under Pa.R.A.P. 1571.