MAGAZINE PUBLISHERS OF AMER-
ICA; Rodale Press, Inc.; Cowles Maga-
zines; A.K.A. Productions; Common-
wealth Communications Services, Inc.;
Farm Journal, Inc.; Metro Corp.; News
America Publications, Inc.; Northwoods
Publishers, Inc.; Pennsylvania Maga-
zine Company; Press–Enterprise, Inc.;
QED Communications, Inc.; Spring-
house Corporation; and Wentworth
Publishing Co., Appellants,

v.

COMMONWEALTH of Pennsylvania, DE-
PARTMENT OF REVENUE c/o Eileen
H. McNulty, Secretary and Eileen H.
McNulty, in her capacity as Secretary of
the Department of Revenue, Appellees.

Supreme Court of Pennsylvania,
Middle District.

Argued Dec. 7, 1993.
Decided Jan. 18, 1995.

David H. Marion, Howard J. Bashman, Philadelphia, for Magazine Publishers, et al.

Ronald Shur, Voorhees, NJ, Reuben A. Guttman, Blue Bell, for amicus curiae American B.P.

Matthew W. Tomalis, Harrisburg, for Dept. of Revenue.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## *OPINION*

NIX, Chief Justice.

Appellants, the Magazine Publishers of America and the Pennsylvania-based publishers of magazines, appeal from the Order of the Commonwealth Court which denied their request for declaratory and injunctive relief. In their petition to the Commonwealth Court, Appellants alleged that the December 13, 1991, amendment to the Tax Reform Code of 1971 ("Tax Code"),[1] which deleted the sales and use tax exclusion for magazines, violated their state and federal consti-tutional rights to freedom of speech, freedom of the press, equal protection of the laws, and uniformity of taxation. The Commonwealth Court rejected each of these arguments[2] and this appeal followed.

This action was commenced by Appellants to challenge the constitutionality of an amendment to section 7204 of the Tax Code. Section 2 of the Act of December 13, 1991, P.L. 373, No. 40 (codified as amended at 72 P.S. § 7204(30)), amended the Tax Code by deleting magazines from the exemption set forth in 72 P.S. § 7204(30)[3] ("newspaper exemption"). Prior to this amendment, both magazines and newspapers were exempt from the six per cent sales tax.

In analyzing Appellants' challenge to the extension of the sales tax to magazines, the Commonwealth Court relied heavily on the United States Supreme Court case of *Leathers v. Medlock*, 499 U.S. 439, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991). *Leathers* involved a First Amendment challenge to the constitutionality of an Arkansas tax scheme that extended the generally applicable state sales tax to certain members of the media while exempting others. The Court noted that First Amendment concerns are not raised simply because one segment of the media "is taxed differently from other media.... [A] tax that discriminates among speakers is constitutionally suspect only in certain circumstances." *Id.* at 444, 111 S.Ct. at 1442, 113 L.Ed.2d at 502. A review of *Leathers* and its predecessor *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), clearly identifies those circumstances in which a taxation scheme offends the First Amendment.

---

1. Act of March 4, 1971, P.L. 6, No. 2 (codified as amended at 72 P.S. §§ 7101–10004).

2. The Commonwealth Court noted that Appellants' complaint consisted of a *prima facie* challenge to the constitutionality of the sales and use tax and did not involve any factual determinations. The court therefore concluded that it was appropriate to consider Appellants' application for summary relief.

3. Section 7204 of the Tax Code provides in relevant part:
   The tax imposed by [72 P.S. § 7202] shall not be imposed upon
   . . . .

(30) The sale at retail or use of newspapers. For purposes of this section, the term "newspaper" shall mean a "legal newspaper" or a publication containing matters of general interest and reports of current events which qualifies as a "newspaper of general circulation" qualified to carry a "legal advertisement" as those terms are defined in 45 Pa.C.S. § 101 (relating to definitions), not including magazines. This exclusion shall also include any printed advertising materials circulated with such newspaper regardless of where or by whom such printed advertising material was produced.
72 P.S. § 7204(30).

In *Arkansas Writers' Project*, the United States Supreme Court declared that the selective, content-based taxation of certain magazines was invalid under the First Amendment. Arkansas had imposed a taxation scheme that subjected general interest magazines to the state sales tax, but exempted newspapers and religious, professional, trade, and sports journals. The Court found the tax invalid because the state advanced no compelling justification for a facially discriminatory, differential tax that targeted a select group of magazines based on their content. *Id.* at 234, 107 S.Ct. at 1730, 95 L.Ed.2d at 223. Because the Court decided the case based on the selective application of the tax to magazines, it declined to consider "whether a distinction between different types of periodicals presents an additional basis for invalidating the sales tax, as applied to the press." *Id.* at 233, 107 S.Ct. at 1729–30, 95 L.Ed.2d at 222. However, the Court subsequently addressed the issue of intermedia differentiation in *Leathers v. Medlock*, 499 U.S. 439, 111 S.Ct. 1438, 113 L.Ed.2d 494.

In *Leathers*, the Court upheld an amendment to the Arkansas tax code that extended the state's generally applicable sales and use tax to include cable television. A number of cable companies and customers challenged the constitutionality of extending the sales tax to cable because subscription and over-the-counter newspaper sales, as well as subscription magazine sales, were exempt from the tax.[4] *Id.* at 442–43, 111 S.Ct. at 1441–42, 113 L.Ed.2d at 500–01. The challenge was based on the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 443, 111 S.Ct. at 1441, 113 L.Ed.2d at 501.

In reviewing past cases involving taxation and the First Amendment, the Supreme Court stated that "differential taxation of First Amendment speakers is constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints." *Id.* at 447, 111 S.Ct. at 1443, 113 L.Ed.2d at 503. The Court then identified three instances when a differential tax warrants heightened judicial scrutiny. First, when the tax singles out the press from other businesses. *Id.* (citing *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983); *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936)). Second, when the tax targets a small group of speakers. *Id.* at 447, 111 S.Ct. at 1443, 113 L.Ed.2d at 503–04 (citing *Minneapolis Star, supra; Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987)). Finally, a differential tax will be subjected to heightened scrutiny when the tax discriminates on the basis of the content of the taxpayer's speech. *Id.* at 447, 111 S.Ct. at 1443, 113 L.Ed.2d at 504 (citing *Arkansas Writers' Project, supra*). After concluding that the Arkansas tax scheme did not implicate any of the foregoing concerns, the Court indicated that the cable petitioners could prevail only if the tax scheme provided "an additional basis" for finding that the state had violated their First Amendment rights. *Id.* at 449, 111 S.Ct. at 1444, 113 L.Ed.2d at 505 (citing *Arkansas Writers' Project, supra*).

The cable petitioners asserted as an additional basis that the Arkansas tax scheme discriminated among different media as well as within a particular medium. *Id.* They argued that even though there was an absence of any evidence of intent to suppress speech or particular ideas, this intermedia and intramedia discrimination violated their First Amendment rights. *Id.* The Court rejected this argument and stated that "differential taxation of speakers, even members of the press, does not implicate the First Amendment unless the tax is directed at, or presents the danger of suppressing, particular ideas." *Id.* at 453, 111 S.Ct. at 1447, 113 L.Ed.2d at 507–08. The Court determined that the Arkansas tax scheme did not present the danger of suppressing particular ideas. *Id.* at 453, 111 S.Ct. at 1447, 113 L.Ed.2d at 508. It therefore held that the "[s]tate's extension of its generally applicable sales tax to cable television services alone, or to cable and satellite services, while exempt-

---

**4.** Prior to 1987, neither cable television nor scrambled satellite broadcast television to home dish-antennae owners was subject to state sales tax. In 1987, the sales tax was applied to cable television services. Two years later, the sales tax was extended to satellite television services.

ing the print media [did] not violate the First Amendment." *Id.* Consequently, the constitutionality of the Arkansas tax scheme was upheld.[5] *Id.*

■ We read *Leathers* to stand for the proposition that it is permissible under the First Amendment for a state legislature to enact a taxation scheme which exempts certain members of the media from a generally applicable sales tax. It is clear, however, that such a tax scheme may not single out the press, target a small group of speakers, or make distinctions on the basis of content. If the differential tax scheme has such an effect, then the state must advance a compelling justification for its action. Guided by these considerations, we now proceed to address Appellants' arguments.

Appellants first contend that the application of Pennsylvania's sales tax to magazines violates the First Amendment to the United States Constitution. They argue that the only distinction between magazines and newspapers for purposes of the Tax Code is one based on content. In support of this position, Appellants assert that many magazines meet all of the content-neutral criteria found in the definition of newspaper set forth in 45 Pa.C.S. 101(a).[6] In addition, Appellants refer to the language in the newspaper exemption which provides that a "newspaper" is a " 'legal newspaper' or a publication containing matters of general interest and reports of current events...." 72 P.S. § 7204(30).[7] It is therefore Appellants' contention that because many magazines meet all the content-neutral requirements of 45

5. The Supreme Court remanded to the Arkansas Supreme Court to answer the equal protection question that arose as a result of the state's temporary tax distinction between cable and satellite services.

6. Newspaper is defined as:

(1) A printed paper or publication, bearing a title or name, and conveying reading or pictorial intelligence of passing events, local or general happenings, printing regularly or irregularly editorial comment, announcements, miscellaneous reading matter, commercial advertising, classified advertising, legal advertising, and other notices, and which has been issued in numbers of four or more pages at short intervals, either daily, twice or oftener each week, or weekly, continuously during a period of at least six months, or as the successor of such a printed paper or publication issued during an immediate prior period of at least six months, and which has been circulated and distributed from an established place of business to subscribers or readers without regard to number, for a definite price or consideration, either entered or entitled to be entered under the Postal Rules and Regulations as second class matter in the United States mails, and subscribed for by readers at a fixed price for each copy, or at a fixed price per annum. A newspaper may be either a daily newspaper, weekly newspaper, newspaper of general circulation, official newspaper, or a legal newspaper, as defined in this section. Continuous publication within the meaning of this section shall not be deemed interrupted by any involuntary suspension of publication resulting from loss, destruction, failure or unavailability of operating facilities, equipment or personnel from whatever cause, and any newspaper so affected shall not be disqualified to publish official and legal advertising in the event that

publication is resumed within one week after it again becomes possible.

(2) A printed paper or publication, regardless of size, contents, or time of issue, or number of copies issued, distributed and circulated gratuitously, is not a newspaper.

(3) A printed paper or publication, not entitled to be entered, or which has been denied entry, as second class matter in the United States mails under the Postal Rules and Regulations of the United States is not a newspaper. 45 Pa.C.S. § 101(a).

Magazine is defined as: "Partakes of the nature of a periodical." *Id.*

Periodical is defined as:

A printed paper or publication, issued in pamphlet or book form, regardless of page size or number of pages, at stated or regular intervals of more than one day between each issue, containing either general, class, trade, technical, scientific, serial articles, or other reading matter, advertising, et cetera, and entitled to be entered as second class matter in the United States mails under the Postal Rules and Regulations of the United States. *Id.*

7. *See* note 3, *supra*, for the full text of 72 P.S. § 7204(30).

A "legal newspaper" is defined as:

A newspaper which is a "legal periodical," "official legal newspaper," or "official legal periodical," publishing legal intelligence, as designated by general rule or rule of the court for the publication of legal advertisements and notices required by law, rule, order, or decree of court, to be published in a legal newspaper, legal periodical, official legal newspaper, or official legal periodical, so designated by general rule or rule of court. 45 Pa.C.S. § 101(a).

Pa.C.S. 101(a) and 72 P.S. § 7204(30), the availability of the sales tax exemption to those magazines depends solely on their content. We disagree and find that the Commonwealth Court correctly relied on *Leathers* in upholding the validity of the newspaper exemption set forth in 72 P.S. § 7204(30), as well as the application of Pennsylvania's sales tax to magazines.

■ In rejecting Appellants' contention that the tax on magazines discriminates against free speech on the basis of content, the Commonwealth Court found that "nothing in the language of the newspaper exemption in Section 7204(30) of the Tax Code distinguishes newspapers from magazines on the basis of content." *Magazine Publishers of America v. Commonwealth of Pennsylvania, Dep't of Revenue,* 151 Pa.Commw. 592, 599, 618 A.2d 1056, 1060 (1992). The court further stated that

[u]nder Section 7204(30) *all* magazines are subject to the sales and use tax regardless of their content. As reflected by the statutory definitions of newspapers and magazines set forth in 45 Pa.C.S. § 101, no distinctions are made based upon the contents of newspapers and magazines. In-

stead, the distinctions between newspapers and magazines are based on the format and the frequency of publication.

*Id.* We agree with the Commonwealth Court that the distinction between newspapers and magazines, as set forth in the newspaper exemption and the provisions that relate to it, is based on the format and frequency of publication, not the content. The exemption provides that all publications which fit within the definition of newspaper shall be exempt from the six per cent sales tax. Newspaper means "a 'legal newspaper' or a publication containing matters of general interest and reports of current events which qualifies as a 'newspaper of general circulation' qualified to carry a 'legal advertisement' as those terms are defined in 45 Pa.C.S. § 101 (relating to definitions), *not including magazines.*" 72 P.S. § 7204(30) (emphasis added). It is clear from this language that all magazines, regardless of their content, are subject to taxation.[8] Thus, we reject Appellants' contention that content is the basis for the inclusion of magazines in the items of tangible personal property that are subject to the sales tax.[9]

---

8. Appellants also cite the recent United States Supreme Court case of *City of Cincinnati v. Discovery Network, Inc.,* —— U.S. ——, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), for the proposition that a law which distinguishes on the basis of content violates the First Amendment.

*Cincinnati v. Discovery Network* involved an ordinance used by the city to prohibit the placement of newsracks on city streets for distribution of publications which were considered "commercial handbills." The city did, however, permit the use of newsracks to distribute newspapers. The Court held that the city did not meet its burden of establishing a "reasonable fit" between its legitimate interests in the safety and esthetics of its streets and the means chosen to serve to those interests. *Id.* at ——, 113 S.Ct. at 1515, 123 L.Ed.2d at 115.

The city argued that its regulation of newsracks constituted a reasonable restriction on the time, place, and manner of engaging in protected speech, without reference to the content of that speech. The Supreme Court disagreed and stated that

the very basis for the regulation is the difference in content between ordinary newspapers and commercial speech.... Under the city's newsrack policy, whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack. Thus, by any commonsense under-

standing of the term, the ban in this case is "content-based."

*Id.* at ——, 113 S.Ct. at 1516–17, 123 L.Ed.2d at 116 (citation omitted). The Court also noted that "the distinction between a 'newspaper' and a 'commercial handbill' is by no means clear ...., the city deems a 'newspaper' as a publication *'primarily* presenting coverage of, and commentary on, current events,' (emphasis added)—the responsibility for distinguishing between the two carries with it the potential for invidious discrimination of disfavored subjects." *Id.* at —— n. 19, 113 S.Ct. at 1513 n. 19, 123 L.Ed.2d at 112 n. 19 (citation omitted).

In the instant case, no such potential for discrimination exists. As noted above, the distinction between magazines and newspapers is based on the format and frequency of publication. Thus, a particular subject or viewpoint could not serve as the basis for the Commonwealth's categorization of a publication as a newspaper or magazine for purposes of the sales tax exemption.

9. Following oral argument in this matter, this Court issued a *per curiam* Order directing the Commonwealth to file a supplemental brief describing the procedures used in categorizing a publication as a newspaper or magazine for purposes of 72 P.S. § 7204(30).

■ Appellants next argue that the Pennsylvania sales tax unconstitutionally singles out the press for special treatment. Although they concede that magazines are part of the generally applicable sales and use tax, Appellants contend that magazines are the only item of tangible personal property taxed under the sales and use tax solely to benefit the Public Transportation Assistance Fund. In support of this position, Appellants cite 72 P.S. § 7281.2 which provides in relevant part:

(a) All revenues received on or after July 1, 1992, from the imposition of the tax on periodicals shall be transferred to the Public Transportation Assistance Fund according to the formula set forth in subsection (b).

(b) Within 30 days of the close of any calendar month, .44 per cent (.0044) of the taxes received in the previous month under [Article II of the Tax Code], less any amounts collected in that previous calendar month under former 74 Pa.C.S. § 1314(d) (relating to Public Assistance Transportation [sic] Fund), shall be transferred to the Public Assistance Transportation [sic]

Fund established under 74 Pa.C.S. § 1314(a).

72 P.S. § 7281.2(a), (b). The Department of Revenue responds that Pennsylvania's tax collection procedures prevent it from ascertaining the exact amount of tax that has been collected from the sale of periodicals so that it can direct that amount to the Public Transportation Assistance Fund. Rather, subsection (b) of 72 P.S. § 7821.2 mandates that .44 per cent of *all* sales and use tax collected from *all* items of tangible personal property, including magazines, is to be transferred to the Public Transportation Assistance. While it appears that the Commonwealth's reading of section 7821.2 is correct, we fail to see how either interpretation would support Appellants' position that the tax on magazines singles out the press. Appellants have not cited any authority nor advanced any legitimate theory to demonstrate how the Commonwealth's disposition of tax revenue singles out the press for special treatment.

In *Leathers*, the United States Supreme Court identified the dangers that arise from a tax that singles out the press. "The press

In a sworn affidavit, the chief counsel for the Department of Revenue stated that from January 1, 1992, the effective date of 72 P.S. § 7204(30), to July 1, 1994, the Department of Revenue has received three written requests seeking determinations as to whether a particular publication qualified as an exempt newspaper under section 7204(30). Two of the three publications were denied exempt status. ⅃The first publication, *Traders Guide*, was denied the exemption because it was "not a newspaper of general circulation qualified to carry a legal advertisement." Supplementary Brief for Appellees, Exhibit A at 3. The second publication, *Women's News Journal*, was denied exempt status because it was "published monthly which [was] too infrequent a time interval to qualify as a 'newspaper' under [45 Pa.C.S. § 101(a)(1)]." *Id.*

According to the chief counsel's affidavit, the Department of Revenue also makes determinations as to whether a publication is a magazine or newspaper during the course of an audit of a particular taxpayer. In making this determination, the chief counsel avers that

the standards employed by all personnel of the Department of Revenue called upon to determine whether a publication is exempt under Section 204(30) of the Tax Reform Code are the statutory provision itself and any private letter rulings that have been issued by the Department of Revenue. If a publication is clearly a magazine—as, for example, *Time* and *Newsweek* are—its sales would be considered taxable under Section 204(30) of the Code,

because the statutory language excludes all magazines from the exemption. If a publication is not clearly a magazine, it has been the practice of the Department of Revenue to forego a further inquiry into whether the publication might actually be a magazine and focus instead on whether the publication fits within the statutory definition of an exempt newspaper. It is [the chief counsel's] understanding that the essence of each such determination has been and continues to be whether the publication in question is qualified to carry legal advertisements.

*Id.* at 6.

Appellants were given an opportunity to file a reply brief in which they responded that 72 Pa. C.S. § 7204(30) would violate the First Amendment even if the only requirement to qualify as an exempt newspaper was that the publication carry legal advertisements. Appellants point to the fact that in order to qualify to carry legal advertisements, a publication must be a newspaper as defined in 45 Pa.C.S. § 101(a). They claim that the definition of newspaper in 45 Pa.C.S. § 101(a) is just as content-based as the definition of newspaper in 72 Pa.C.S. § 7204(30).

Based on our review of the supplemental briefs filed in response to the aforementioned Order, we are satisfied that the Commonwealth has applied 72 P.S. § 7204(30) in a content-neutral manner.

plays a unique role as a check on government abuse, and a tax limited to the press raises concerns about censorship of critical information and opinion." *Leathers v. Medlock,* 499 U.S. 439, 447, 111 S.Ct. 1438, 1443, 113 L.Ed.2d 494, 503 (1991). Section 7202 of the Tax Code imposes a six percent sales tax on the sale of all tangible personal property, subject to specific exemptions. Clearly, this is a tax of general applicability and was not designed to "suppress the expression of particular ideas or viewpoints." *Id.* Furthermore, we do not perceive that the tax scheme at issue here has had any such effect. Accordingly, we conclude that the tax on magazines does not single out the press.

■ Appellants next assert that a tax on magazines violates Article 1, Section 7, of the Pennsylvania Constitution [10] which provides broader protection for freedom of speech than the First Amendment. They argue that the tax should be invalidated on state constitutional grounds because a tax on magazines discourages one form of expression in favor of another. This argument again presumes that magazines are distinguished from newspapers on the basis of content. As stated previously, publications are exempt from the generally applicable sales tax on the basis of format and frequency, not content. Thus, we find no abridgement of Appellants' rights under Article 1, Section 7 of the Pennsylvania Constitution.

Finally, Appellants claim that the application of the sales tax to magazines violates their federal and state constitutional rights to equal protection as well as the Uniformity Clause of the Pennsylvania Constitution.[11]

They assert that as members of the press sharing numerous common characteristics, equal protection requires that magazines and newspapers be treated similarly. Appellants further submit that the magazine tax should be subjected to strict scrutiny because the Commonwealth's classification of magazines impinges upon the exercise of the fundamental rights of freedom of speech and freedom of the press.

"The equal protection provisions of the Pennsylvania Constitution are analyzed by this Court under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution." *Love v. Borough of Stroudsburg,* 528 Pa. 320, 325, 597 A.2d 1137, 1139 (1991) (citing *James v. Southeastern Pennsylvania Transp. Auth.,* 505 Pa. 137, 477 A.2d 1302 (1984)). In *Leonard v. Thornburgh,* 507 Pa. 317, 489 A.2d 1349 (1985), this Court set forth the analysis used in determining the validity of a classification for tax purposes.

The principles which govern the analysis of claims of non-uniform taxation are well established. The legislature possesses wide discretion in matters of taxation. The burden is upon the taxpayer to demonstrate that a classification, made for purposes of taxation, is unreasonable. Indeed, tax legislation will not be declared unconstitutional unless it " '*clearly, palpably,* and *plainly* violates the Constitution.' "

Under the equal protection clause, and under the Uniformity Clause, absolute

---

**10.** Article 1, Section 7, of the Pennsylvania Constitution provides in relevant part:

The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

Pa. Const. Art. 1, § 7.

**11.** Section One of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state shall "deny to any person

within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Section 26 of Article 1 of the Pennsylvania Constitution provides: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. Art. 1, § 26.

Section 1 of Article 8 of the Pennsylvania Constitution (the Uniformity Clause) provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. Art. 8, § 1.

equality and perfect uniformity in taxation are not required. In cases where the validity of a classification for tax purposes is challenged, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and "'reasonable and just'" basis for the difference in treatment. Stated alternatively, the focus of judicial review is upon whether there can be discerned "some concrete justification" for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens. When there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional.

*Id.* at 320–21, 489 A.2d at 1351–52 (citations omitted).

■ The Commonwealth Court applied these principles to conclude that "the legislature has valid interests in exempting newspapers from the sales tax, including the promotion of an inexpensive daily source of public information, thereby enhancing the general knowledge· and literacy of its citizens." *Magazine Publishers of America v. Commonwealth of Pennsylvania, Dep't of Revenue,* 151 Pa.Commw. 592, 602, 618 A.2d 1056, 1062 (1992). We agree with the Commonwealth Court and additionally note that by exempting newspapers from the sales tax, the legislature has furthered the public interest by making available a source of current news and information to those of moderate to low income who might not otherwise have access to such information. Legitimate reasons therefore exist for the legislature's decision to distinguish newspapers from other types of media in creating an exemption from the generally applicable sales tax. Accordingly, we conclude that the sales tax, as applied to magazines, does not violate Appellants' federal or state constitutional rights to equal protection under the law.

The Order of the Commonwealth Court is affirmed.

LARSEN, J., did not participate in the consideration or decision of this matter.

FLAHERTY, J., files a dissenting opinion in which PAPADAKOS, J., joins.

MONTEMURO, J., is sitting by designation.

FLAHERTY, Justice, dissenting.

I dissent. The proposed magazine tax would violate Article 1, Section 7, of the Pennsylvania Constitution which provides broader protection for freedom of press and speech than the First Amendment. In pertinent part it provides that:

[T]he printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

Pennsylvania's guarantees of free speech and a free press were pre-existent to, and parts of, the Declaration of Rights found in Pennsylvania's post-revolutionary Constitution, adopted on September 28, 1776. *Commonwealth v. Edmunds,* 526 Pa. 374, 392, 586 A.2d 887, 896 (1991). This Court, in *Insurance Adjustment Bureau v. Insurance Comm'r,* 518 Pa. 210, 224–25, 542 A.2d 1317, 1324 (1988), recognized that Article 1, § 7 of the Pennsylvania Constitution provides protection for freedom of speech broader than the federal constitutional guarantee.

We must always be wary of the government's control of the expression of ideas and the power to tax is one such control. A tax on magazines that discourages one form of expression, magazines, in favor of another, newspapers, clearly operates to restrain the use of the printing press to examine the proceedings of government. This is in direct violation of the first sentence of Article 1, § 7 of the Pennsylvania Constitution, which states that "no law shall ever be made to restrain the right thereof." The magazine tax similarly encroaches upon the "free communication of thoughts and opinions" guaranteed to "every citizen" by the second sentence of Article 1, § 7. The Pennsylvania

Constitution therefore provides a strong ground for invalidating the magazine tax. The tax restrains the crucial function of the press as government watchdog and limits the free communication of thoughts and opinions in print.

The Commonwealth Court's decision that the distinction between newspapers and magazines is based on the format and frequency of the publication, not the content, is unsatisfactory. These concepts can easily become blurred. Many magazines meet all of the content-neutral criteria found in the definition of newspaper set forth in 45 Pa.C.S. § 101(a). In addition, the language of the newspaper exemption provides that a "newspaper" is a " 'legal newspaper' or a publication containing matters of general interest and reports of current events ..." 72 P.S. § 7204(30). One can not determine whether a particular publication "contains matters of general interest and reports of current events" merely by examining its form as opposed to reading and analyzing its contents.

For the above reasons, I dissent and believe that the order of the Commonwealth Court, which denied appellants' request for declaratory and injunctive relief, should be reversed.

PAPADAKOS, J., joins this dissenting opinion.