**ADELPHIA HOUSE PARTNERSHIP, Joseph Eisenstadt, Partner, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

**SYLVANIA HOUSE PARTNERSHIP and Joseph Eisenstadt, Partner, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1998.

Decided March 12, 1998.

Steven R. Sosnov, Norristown, for petitioner.

Karen M. Gard, Deputy Attorney General, Harrisburg, for respondent.

Before PELLEGRINI and LEADBETTER, JJ., and JIULLIANTE, Senior Judge.

PELLEGRINI, Judge.

Sylvania House Partnership, Adelphia House Partnership and Joseph Eisenstadt, as partner in both (collectively, Taxpayers) appeal from the January 25, 1995 orders of the Pennsylvania Board of Finance and Revenue sustaining the Board of Appeals' denial of Taxpayers' requests for refund.[1]

Taxpayers own and operate two separate apartments buildings in Philadelphia—Sylvania House and Adelphia House. Each building contains commercial units, residential units and common areas. Residential tenants pay a monthly rental fee that includes all utilities. To provide utilities to tenants in its buildings, Taxpayers purchase electricity from Philadelphia Electric Company and natural gas from Philadelphia Gas Works in bulk.[2] The purchase of these utilities by Taxpayers is taxed at a rate of six percent pursuant to Section 202 of the Tax Reform Code of 1971 (Tax Code),[3] 72 P.S. § 7202.[4]

On December 3, 1993, Taxpayers filed a petition for refund with the Board of Appeals of the Department of Revenue seeking a refund of taxes paid on electricity and gas.[5] When the Board of Appeals denied their request, Taxpayers appealed to the Board of Finance and Revenue (Board) where they argued that they were entitled to a refund because Section 201(m) of the Tax Code only

---

1. By order of this court dated November 21, 1997, the petitions for review filed by Sylvania and Adelphia were consolidated for our review.

2. The commercial units in each building have separate submeters for electricity that allow them to reimburse the Taxpayers for actual use.

3. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

4. Section 202 of the Tax Code provides:

 There is hereby imposed upon each separate sale at retail of *tangible personal property or services,* as defined herein, within this Commonwealth a tax of six percent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.
 72 P.S. § 7202 (emphasis added).

5. Sylvania House originally filed a petition for refund with the Board of Appeals requesting a refund in the amount of $131,449.55, representing sales tax paid on utilities between 1985 through 1993. Adelphia House originally filed a petition for refund with the Board of Appeals requesting a refund in the amount of $149,-527.33, representing sales tax paid on utilities for the same period. These amounts were calculated based upon each building's ratio of residential to commercial units. Taxpayers currently seek refunds only for those taxes paid since 1991 and have abandoned their prior request for refund dating back to 1985 based upon the statutory limitation period set forth in Section 253(a) of the Tax Code, 72 P.S. § 7253(a), under which they must seek any refund within three years of payment. In accordance with the three year statute of limitations, the refund amounts were subsequently revised to withdraw any claims for refund outside of the limitation period set forth by that Section. The current amount of refund claimed by Sylvania House is now $43,344.23 (sales tax paid on electricity purchases=$29,251.27 and sales tax paid on gas purchases=$14,092.96) and the amount of refund claimed by Adelphia House is now $33,-151.40 (sales tax paid on electricity purchases = $20,450.10 and sales tax paid on gas purchases=$12,701.39).

imposes taxation upon the purchase of utilities for non-residential use and their purchase was for the residential use of their tenants.[6] The Board held that even though Section 201(m) only taxes the purchase of utilities for non-residential use, Section 204(5) only excludes from taxation the purchase of utilities when made "directly by the user thereof solely for his own residential use." 72 P.S. § 7205(5). Therefore, the purchase of utilities by Taxpayers for the residential use of their tenants was subject to taxation. The Board affirmed the denial of Taxpayers' request for a refund and this appeal followed.[7]

Taxpayers contend that the Board erred by finding that their purchases of gas and electricity were subject to taxation because it improperly determined how Section 204(5) affects Section 201(m) of the Tax Code. Section 201(m) of the Tax Code provides that tangible personal property includes:

Corporeal personal property, including, but not limited to, goods, wares, merchandise, *steam and natural and manufactured and bottled gas for non-residential*

*use, electricity for non-residential use . . .* (emphasis added).

72 P.S. § 7201(m).

Section 204(5) of the Tax Code, 72 P.S. § 7204(5), entitled "Exclusions from tax," provides:

The tax imposed by Section 202 shall not be imposed upon—

(5) The sale at retail or use of steam, natural and manufactured and bottled gas, fuel oil, electricity or intrastate subscriber line charges, basic local telephone service or telegraph service when purchased *directly by the user thereof solely for his own residential use* and charges for telephone calls paid for by inserting money into a telephone accepting direct deposits of money to operate. (emphasis added).

72 P.S. § 7204(5).

 Taxpayers seem to be arguing[8] that because Section 201(m) imposes tax only upon the purchase of utilities for non-residential use, and because Section 204(5) is an exclusion to be construed in their favor rather than an exemption,[9] it cannot be used to expand the subjects of taxation set forth in Section 201(m).[10] For Taxpayers to prevail

---

**6.** Taxpayers also contended before the Board that under *Summit House Condominium v. Commonwealth*, 514 Pa. 221, 523 A.2d 333 (1987), the purchase of utilities on behalf of their tenants was not subject to tax. In *Summit House,* our Supreme Court held that purchases of electricity by a condominium council and its management agent for use in residential units and common areas was exempt from sales tax as a purchase by users for their own residential use. However, it held that there was no exemption for the purchase of utilities by landlords.

**7.** Our scope of review of a decision of the Board of Finance and Revenue is very broad; although we hear these cases in our appellate jurisdiction, we function essentially as a trial court. *Scott Electric Company v. Commonwealth of Pennsylvania,* 692 A.2d 289 (Pa.Cmwlth.1997).

**8.** In their brief, Taxpayers set forth their argument as follows:

The Board of Finance and Revenue held that [Section 204(5)] was controlling on section 202 taxable items.

. . .

The use of exclusion language of section 204 to redraft inclusion language in [Section 201(m)] has no basis in any law [Taxpayers] could find.

. . .

[Because] exemptions are strictly construed against the taxpayer, and exclusions are strictly construed against the taxing body ... there is now no legal basis for utilities used for residential purposes to be considered taxable as "taxable personal property."

**9.** While exclusions are items that are not included as part of those items intended to be taxed, exemptions are items that, though ordinarily subject to taxation, are exempt from taxation so long as certain criteria have been met. Exclusions, which are never in the taxing statute in the first place, are to be strictly construed against the taxing body, *Lancaster Laboratories, Inc. v. Commonwealth,* 158 Pa.Cmwlth. 165, 631 A.2d 739 (1993), while exemptions are to be strictly construed against the taxpayer when there is doubt as to the meaning of a statute. *Rossi v. Commonwealth,* 20 Pa.Cmwlth. 517, 342 A.2d 119 (1975).

**10.** Taxpayers contend that the legal maxim *"inclusio unius est exclusio alterius"* applies without any explanation of the application of that maxim other than, "[n]amed utilities for other than non-residential uses are excluded from this definition." We believe that the legal maxim upon which Taxpayers intended to rely is properly titled *"expressio unius est exclusio alterius"* which is a maxim of statutory interpretation

then, they must establish that Section 204(5) is an exclusion and not an exemption, and even if an exclusion, it cannot be used to expand the subject of the tax.

■■■ Whether a taxing provision is an "exemption" to be strictly construed against Taxpayers or an "exclusion" to be construed against the taxing body is not controlled by what it is called, but by its language and the effect of that language. The current Section 204 of the Tax Code is derived from and supplants the former Section 3403–203 of what was known as the Selective Sales and Use Tax Act of March 6, 1956, P.L. (1955–56) 1228, *as amended*, 72 P.S. § 3403–203 (Tax Act). Although, like Section 204, Section 203 of the predecessor Tax Act was entitled "Exclusions to tax," these "exclusions" were generally interpreted to constitute "exemptions" from taxation for items that would otherwise be considered "tangible personal property." For example, in *Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A.2d 199 (1963), our Supreme Court specifically held that the predecessor Tax Act's "true exemptions" were contained in Section 203 of that Act, even though entitled "exclusions." The Court stated:

> The true exemptions in the Act are set forth in Section 203 … It is only when the taxpayer or his property is within the general language of the statute imposing the tax that provisions relied upon to establish an exemption are to be strictly construed.

*Id.* at 141, 194 A.2d at 204. *See also Commonwealth v. Central Pennsylvania Quarry Stripping & Construction*, 422 Pa. 573, 222 A.2d 728 (1966).

Like its predecessor that was also named "Exclusions to tax," Section 204 of the Tax Code, 72 P.S. § 7204, has been consistently

interpreted as setting forth *exemptions* to taxation. *See American Airlines, Inc. v. Commonwealth*, 542 Pa. 1, 665 A.2d 417 (1995) (72 P.S. § 7204(29) provides an *exemption* for food and beverages sold for human consumption); *Magazine Publishers of America v. Commonwealth*, 539 Pa. 563, 654 A.2d 519 (1995) (72 P.S. § 7204(30) provides an *exemption* for newspapers); *PICPA v. Commonwealth*, 535 Pa. 67, 634 A.2d 187 (1993) (72 P.S. § 7204(10) provides *exemption* for charitable organizations that are purely public charities); *Haller v. Commonwealth*, 693 A.2d 266 (Pa.Cmwlth.1997) (72 P.S. § 7204(28) provides an *exemption* for religious articles, Bibles and other religious publications); *but see Ernest Renda Contracting Co., Inc. v. Commonwealth*, 516 Pa. 325, 532 A.2d 416 (1987) (72 P.S. § 7204(3) provides an *exclusion* for tangible personal property brought into Pennsylvania in connection with establishment of a permanent business where certain conditions have been met).

Moreover, the guidelines promulgated by the Department of Revenue (Department) pursuant to the Tax Code also support the treatment of Section 204(5) of the Tax Code as an *exemption* and not an exclusion to taxation. The Department's regulations regarding sales taxes imposed upon the purchase of utilities limit the type of purchaser who is *exempt* from taxation:

> The purchase or use of steam, natural and manufactured gas and electricity, through a metered device; bottled gas; fuel oil; or kerosene by a *residential purchaser solely for the purchaser's own residential use* [11] is *exempt* from tax. (emphasis added).

---

meaning that the expression of one thing is the exclusion of another. Black's Law Dictionary 402 (6th Ed.1991). To hold automatically that the legislature's intent does not encompass something not specifically set forth in a statute can sometimes thwart that intent. *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 388–389, 368 A.2d 675, 684 (1977). In any event, we do not understand how this maxim could even apply.

**11.** The regulations define "residential use" of steam, gas and electricity as follows:

The use or consumption within that portion of a structure used as a home, dwelling, private residence, condominium, housing cooperative, mobile home, camper, summer home, motor home or similar place of abode. The term includes the use or consumption by a condominium association or housing cooperative association that acts on behalf of residents who are using the units as their personal residence. 61 Pa.Code § 32.25(a).

61 Pa.Code § 32.25(b)(1).[12]

 Because Section 204(5) creates an exemption and not an exclusion from taxation, that section must be strictly construed against Taxpayers. Under that construction, Section 204(5), read *in pari materia* with Section 201(m),[13] exempts Taxpayers from taxation upon their purchase of utilities only if they were the "direct users thereof." In *Aldine Apartments, Inc. v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981), our Supreme Court, under the exact exemption language (albeit then set forth by Section 201(m)),[14] held that a landlord's purchase of utilities on behalf of its tenants and included in the rental price of the residential unit does not constitute a "residential use" and is not excluded from taxation under the Tax Code.[15] Because the same exemption language relied upon by the Court in *Aldine Apartments* is currently part of the Tax Code, the holding of that case still applies and Taxpayers, as landlords, are not entitled to a refund for taxes paid on their purchase of utilities on behalf of their tenants and included in the tenants' monthly rental fee.

Even if Section 204(5) were treated as an exclusion rather than as an exemption so that it would be strictly construed against the taxing body and in favor of Taxpayers (and so that *Aldine Apartments* would no longer apply), we would have reached the same result that Taxpayers would not be entitled to a refund because the plain meaning of the statutory language controls. Reading both Sections 201(m) and 204(5) in *pari materia,* it is clear that the purchase of utilities for residential purposes is not subject to sales tax only when that purchase has been made directly by the ultimate residential user. In this case, the Taxpayer's purchase of utilities for use in the personal residences of its tenants and provided as part of the monthly rent constituted a "non-residential" use that is subject to taxation. This type of purchase was part of a commercial contractual arrangement between Taxpayers and its tenants and clearly was not purchased "directly by the user thereof solely for his own residential use" as required by Section 204(5) of the Tax Code. To accept the Taxpayers' contention to the contrary, even if Section 204(5) were interpreted as an exclusion, would render that Section meaningless and violate Section 1932 of the Rules of Statutory Construction, 1 Pa.C.S. § 1932.

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
(2) That the General Assembly intends the entire statute to be effective and certain.
. . .
1 Pa.C.S. § 1922.

---

**12.** Significantly, the regulations also set forth specific examples of purchases of utilities which are subject to tax, including:

The purchase or use of steam, natural and manufactured gas, electricity, bottled gas, fuel oil or kerosene, by an apartment complex for use by the tenants is subject to tax, unless the apartment complex resells the property or service through a metering device to the individual tenants.

61 Pa.Code § 32.25(d)(4)(iii).

**13.** When construing one section of a statute, we must read that section not by itself, but with reference to and in light of other sections because there is a presumption that in drafting a statute, the General Assembly intended the entire statute to be effective. *Commonwealth v. Lopez,* 444 Pa.Super. 206, 663 A.2d 746 (1995). The Pennsylvania Rules of Statutory Construction provide that statutes or parts of statutes are *in pari materia* when they relate to the same thing and should be construed together, if possible, as one statute. 1 Pa.C.S. § 1932. Moreover, Section 1922 of the Pennsylvania Rules of Statutory Construction provides:

In ascertaining the intention of the General Assembly in the enactment of a statute, the following presumptions, among others, may be used:

**14.** On August 1, 1991, the Tax Code was amended. However, prior to the 1991 Amendments, Section 201(m) of the Tax Code, defining tangible personal property, provided that such term shall *not* include:

. . . steam, natural and manufactured and bottled gas, fuel oil, electricity or intrastate telephone or telegraph service when *purchased directly by the user thereof solely for his own residential use.* (emphasis added).

Former 72 P.S. § 7201(m).

**15.** Although Taxpayers argue that *Aldine Apartments* is no longer applicable because the former Section 201(m) was treated by the Court in *Aldine Apartments* as an exemption, whereas that language is now embodied as an exclusion in Section 204(5) of the amended version of the Tax Code, we have already determined that language constitutes an exemption to taxation.

Accordingly, Taxpayers' refund request was properly denied and the orders of the Board are affirmed.

### ORDER

And now, this 12th day of March, 1998, the decisions and orders of the Pennsylvania Board of Finance and Revenue, dated January 25, 1995, are affirmed. Unless exceptions are filed within 30 days in accordance with the provisions of Pa.R.A.P. 1571(i), this order shall become final.