477 A.2d 1302

**William JAMES, Appellee,**

**v.**

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 10, 1984.

Decided May 24, 1984.

Stuart A. Schwartz, Norman Hegge, Jr., Philadelphia, Andrew S. Gordon, Deputy Atty. Gen., for appellant.

George J. O'Neill, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On May 7, 1975 William James, the plaintiff-appellee in this case, allegedly fell and sustained injuries while walking on stairs owned and maintained by SEPTA (Southeastern Pennsylvania Transportation Authority). He filed a summons and complaint against SEPTA, and SEPTA answered and raised new matter alleging that James had not given the proper notice of the injury as was required by the Metropolitan Transportation Authorities Act. Section 2036 of that act, now repealed, provided:

Limitation of actions against authority

Within six months from the date that any injury was received, or any cause of action accrued, any person who is about to commence any civil action in any court against the authority for damages on account of any injury to his person shall file in the office of the secretary of the board, and also in the office of the chief counsel for the authority, either by himself, his agent, or attorney, a statement in writing, signed by himself, his agent, or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date, and about the hour of the accident, the place or location where the accident oc-

curred, and the name and address of the attending physician, if any. If the notice provided for [in] this section is not filed as provided, any civil action commenced against the authority more than six months after the date of injury, shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing.

66 P.S. § 2036.[1]

Although James argued that he had given the statutorily required notice through his original attorney, who was

---

1. Section 2036 of the Metropolitan Transportation Authorities Act of 1963, P.L. 984, § 36, 66 P.S. § 2036 was repealed by Act of April 28, 1978, P.L. 202, No. 53, § 2(a)(1371). Subsequently, legislation was passed requiring that notice of claim be served on all state and government units within six months of injury or accrual of a cause of action:

**§ 5522. Six months limitation**

**(a) Notice prerequisite to action against government unit.—**

(1) Within six months from the date that any injury was sustained or any cause of action accrued, any person who is about to commence any civil action or proceeding within this Commonwealth or elsewhere against a government unit for damages on account of any injury to his person or property under Chapter 85 (relating to matters affecting government units) or otherwise shall file in the office of the government unit, and if the action is against a Commonwealth agency for damages, then also file in the office of the Attorney General, a statement in writing, signed by or in his behalf, setting forth:

(i) The name and residence address of the person to whom the cause of action has accrued.

(ii) The name and residence address of the person injured.

(iii) The date and hour of the accident.

(iv) The approximate location where the accident occurred.

(v) The name and residence or office address of any attending physician.

(2) If the statement provided for by this subsection is not filed, any civil action or proceeding commenced against the government unit more than six months after the date of injury to person or property shall be dismissed and the person to whom any such cause of action accrued for any injury to person or property shall be forever barred from proceeding further thereon within this Commonwealth or elsewhere. The court shall excuse failure to comply with this requirement upon a showing of reasonable excuse for failure to file such statement.

(3) In the case of a civil action or proceeding against a government unit other than the Commonwealth government:

(i) The time for giving such written notice does not include the time during which an individual injured is unable, due to incapaci-

deceased at the time of this action, SEPTA put in evidence that it never received such notice. The trial court determined that SEPTA had not received the required notice and granted SEPTA's motion for summary judgment without addressing James' claim that the notice statute violated "equal protection of the law, due process of law, and the privileges and immunities of citizens of the United States guaranteed by the U.S. Constitution and the Constitution of Pennsylvania." A panel of Superior Court, 312 Pa.Superior Ct. 512, 459 A.2d 338, reversed, Judge Wieand dissenting, holding that the six month notice requirement of the Metropolitan Transportation Authorities Act violated the equal protection clause of the United States Constitution.

■ We granted allocatur primarily to determine whether provisions of the Pennsylvania or the United States Constitution were violated by the notice statute in question. There is, of course, a presumption of constitutionality attaching to any lawfully enacted legislation. Should the constitutionality of such legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable, and plain demonstration that the statute violates a constitutional provision.

tation or disability from the injury, to give notice, not exceeding 90 days of incapacity.

(ii) If the injuries to an individual result in death, the time for giving notice shall commence with such death.

(iii) Failure to comply with this subsection shall not be a bar if the government unit had actual or constructive notice of the incident or condition giving rise to the claim of a person.

**(b) Commencement of action required.**—The following actions and proceedings must be commenced within six months:

(1) An action against any officer of any government unit for anything done in the execution of his office, except an action subject to another limitation specified in this subchapter.

(2) A petition for the establishment of a deficiency judgment following sale of the collateral of the debtor under the provisions of section 8103 (relating to deficiency judgments).

(3) Any action subject to 13 Pa.C.S. § 6111 (relating to limitation of actions and levies).

(4) An action under section 4563(c), (relating to civil remedy available).

(5) An action or proceeding to set aside a judicial sale of property. 42 Pa.C.S. § 5522 (Supp.1984).

*Milk Control Commission v. Battista,* 413 Pa. 652, 659, 198 A.2d 840, 843 (1964), *Singer v. Sheppard,* 464 Pa. 387, 393, 346 A.2d 897, 900 (1975).

■ James' first claim is that the notice provisions of the statute violated Art. I, § 11 of the Pennsylvania Constitution, which provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may be law direct.

Two years ago, in a related context, we had occasion to address the meaning of this constitutional provision. In *Carroll v. County of York* this Court upheld the Commonwealth's legislative power to create the immunity of political subdivisions from suit. 496 Pa. 363, 437 A.2d 394 (1981). Concerning the last sentence of Art. I, § 11, the Court stated:

> [W]hile the Framers of Article I, Section 11 did not intend to grant constitutional immunity to the Commonwealth, they "intended to allow the Legislature if it desired, to choose cases in which the Commonwealth should be immune...."

496 Pa. at 367, 437 A.2d at 396, citing *Mayle v. Pennsylvania Dep't of Highways,* 479 Pa. 384, 400, 388 A.2d 709, 717 (1978). Here, as in *York,* the legislature has manifested its choice of cases in which "the Commonwealth should be immune." Inasmuch as notice was not given in this case, a condition precedent to the Commonwealth's consent to be sued was not met, and the action was, under Art. I, § 11, properly dismissed.[2]

2. It should be noted that there is an important distinction between the present case and *Carroll v. York,* supra. In *York* at issue was whether the Commonwealth could be sued at all, but in this case the issue is whether, once sovereign immunity has been upheld, and the Commonwealth has consented to certain types of suit against itself, the

James' challenge to the notice provision, however, is also grounded on the equal protection clause of the Fourteenth Amendment to the United States Constitution and Art. I, § 26 of the Pennsylvania Constitution. The relevant portion of the Fourteenth Amendment provides: "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Art. I, § 26 of the Pennsylvania Constitution provides:

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

The claims made under these separate constitutional provisions are in essence the same: that an unlawful discrimination between classes of litigants and tortfeasors has been made. The claim, in other words, is that it is unlawful and unconstitutional for government tortfeasors and plaintiffs-against-the-government to be treated in one way, while non-governmental tortfeasors and plaintiffs against non-governmental entities are treated in another.

This Court has held, however, that it is not *per se* violative of the equal protection clause for the Commonwealth to treat different classes in different ways:

> Our inquiry ... cannot conclude with the discovery of unequal treatment. "[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways." *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971), and cases cited therein. Except where an invidious discrimination against a suspected class is at issue or a fundamental right burdened, "a legislative classification must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest." *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973).

exercise of sovereign immunity involving certain classifications is constitutionally permissible.

*Singer v. Sheppard,* 464 Pa. 387, 402, 346 A.2d 897, 904–05 (1975) (footnotes omitted).

 Under a typical fourteenth amendment analysis of governmental classifications, there are three different types of classifications calling for three different standards of judicial review. The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a "rational basis" test. *Singer v. Sheppard, Id.* In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Finally, in the third type of cases, if "important," though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review. *U.S. Dept. of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767, 775 (1973) (concurring opinion of Mr. Justice Marshall), citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). There are, in summary, three standards of review applicable to an equal protection case, and the applicability of one rather than another will depend upon the type of right which is affected by the classification.

At the outset, then, we must determine what type of right the present classification affects ("fundamental rights," "important rights," or rights which are neither "fundamental" nor "important"); whether the classification is suspect or involves a sensitive area; the state purpose in making the classification; and what type of relationship there is between the classification and the purpose of the classification.

The United States Supreme Court has recently defined "fundamental rights":

In determining whether a class-based denial of a particular right is deserving of strict scrutiny under the Equal

Protection Clause, we look to the Constitution to see if the right infringed has its source, explicitly or implicitly, therein.

*Plyler v. Doe,* 457 U.S. 202, 216 n. 15, 102 S.Ct. 2382, 2395, n. 15, 72 L.Ed.2d 786, 799, n. 15 (1982). The question, therefore, as to whether the notice classification affects a fundamental right is to be determined by whether the right affected—that of access to the courts in suits against the Commonwealth—is to be found in the Constitution. To ask the question is to answer it. As we have seen, Art. I, § 11 of the Pennsylvania Constitution explicitly reserves to the Commonwealth the power to determine in which cases it will be sued. This power, in turn, is derived from the Eleventh Amendment to the United States Constitution, permitting the states to exercise sovereign immunity, should they choose so to do. We conclude, therefore, that there is no "fundamental right" to sue the Commonwealth, for such right is explicitly limited by Art. I, § 11 of the Constitution of Pennsylvania. Since it is not contended that any suspect classification has been made, and we have concluded that there is no fundamental right at issue, strict scrutiny of the statute is inappropriate.

Whether an intermediate or heightened standard of review is appropriate, as Superior Court held was the case, will depend upon whether an "important" interest has been affected by the classification, and whether sensitive, though not suspect classifications have been made, e.g., classifications based on paternity, *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), or gender, *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). There are, of course, no sensitive classifications in this case; and as Professor Laurence Tribe summarizes "important" interests, they are liberty interests or "a denial of a benefit vital to the individual." *American Constitutional Law,* § 16–31 (1978). Although it may be argued that James' liberty is not affected by this classification, since he was at liberty to sue the Commonwealth had he complied with the notice requirement, it is, nevertheless true that James' important

interest in access to the courts to sue the Commonwealth in cases where the Commonwealth has consented to suit, has been restricted. Superior Court, therefore, was correct in determining that an intermediate or heightened scrutiny standard of review is appropriate.

 This standard of review is characterized by the following techniques: (1) requiring that the governmental interest asserted be an important one, though not "compelling" as is required in a strict scrutiny review, *See Vlandis v. Kline,* 412 U.S. 441, 458–59, 93 S.Ct. 2230, 2239–40, 37 L.Ed.2d 63, 75 (1973) (concurring opinion of Mr. Justice White), *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); (2) requiring that the governmental classification be drawn so as to be closely related to the objectives of the legislation, *Craig v. Boren,* 429 U.S. 190, 199, 97 S.Ct. 451, 458, 50 L.Ed.2d 397, 408 (1976), *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); (3) requiring that a person excluded from enjoyment of an important right or benefit because of his membership in a class be permitted to challenge the denial on the grounds that his *particular* denial would not further the governmental purpose of the legislation.[3] This last technique has been aptly described by Mr. Justice Marshall in *U.S. Dept. of Agriculture v. Murry:*

> In short, where the private interests affected are very important and the governmental interest can be promoted without much difficulty by a well-designed hearing procedure, the Due Process Clause requires the Government to act on an individualized basis, with general propositions serving only as rebuttable presumptions or other burden-shifting devices. That, I think, is the import of *Stanley*

---

3. Two other techniques of intermediate review, requiring that the objective of the legislation be advanced in the litigation and that the objective not be an afterthought, but a purpose sought to be advanced at the time of the legislative enactment, *See* Tribe, *American Constitutional Law* § 16–30, are not applicable to this case. The legislative objective has been advanced in the litigation, and it can hardly be questioned that such was in fact the purpose of the legislature.

*v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

413 U.S. at 518, 93 S.Ct. at 2837, 37 L.Ed.2d at 775. Thus, when an important right has been infringed upon by a government classification, the government must have an important object in making the classification, must provide a mechanism such as a hearing in which those contesting their exclusion from the right can challenge that exclusion, or, it must draw the class so that only those are affected whose exclusion is consistent with the governmental purpose of exclusion. *See* Tribe, *American Constitutional Law*, § 16–30.

In the present case, the governmental purpose of the § 2036 notice provision has been articulated by Superior Court in prior cases, where it has held that the purpose of the notice requirement " '... is to provide the defendant with the opportunity to make timely investigation and avoid the difficulty of defending against stale and fraudulent claims.' " *Dubin v. Southeastern Pennsylvania Transportation Authority*, 219 Pa.Super. 476, 478, 281 A.2d 711, 712 (1971).

■ It remains, then, to analyze the importance of this governmental purpose and whether the classification at issue affects only those persons intended to be affected. As to the importance of the purpose, it is self-evident that the prevention of stale and fraudulent claims is an important and legitimate governmental objective. Further, it is apparent that the classification in the present case is so narrowly drawn as to be closely fitted to the statutory purpose, thus obviating any need for a hearing. Thus, we conclude that the statute passes constitutional muster under both the Fourteenth Amendment and Art. I, § 26 of the Pennsylvania Constitution.

Order of the Superior Court is reversed. Order of the trial court granting SEPTA's motion for summary judgment is reinstated.

ZAPPALA, J., files a concurring opinion.

HUTCHINSON, J., concurs in the result.

LARSEN, J., files a dissenting opinion.

ZAPPALA, Justice, concurring.

While I agree with the result reached today by the majority, and the legal analysis regarding the three different types of classifications for purposes of determining whether a statute violates the Fourteenth Amendment, I must disagree with the majority's application of this analysis to the facts. In particular, I disagree with the majority's determination that an intermediate or "heightened scrutiny" standard of review is appropriate. I cannot agree that the notice requirement of the statute reaches the importance for which the "heightened scrutiny" review was developed. Neither does this case present a sensitive classification such as paternity or gender. Therefore, under the facts of this case, I would apply the rational basis test and hold that the notice requirement does not create an impermissible constitutional barrier.

LARSEN, Justice, dissenting.

Because I am convinced the six-month notice provision of the Metropolitan Transportation Authorities Act [1] (now repealed) violates the equal protection guarantees of the Fourteenth Amendment of the United States Constitution, [2] and Article 1, Section 26 of the Pennsylvania Constitution, [3] I dissent.

"The equal protection clause directs that 'all persons similarly circumstanced shall be treated alike.' *F.S. Roy-*

1. Act of August 14, 1963, P.L. 984 § 36; 66 P.S. § 2036 (repealed by the Act of April 28, 1978, P.L. 202, No. 53 § 2(a) (1371).

2. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*" (emphasis supplied)

3. "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

*ster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed.2d 989 (1920)."

*Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

"In determining whether or not a State law violates the equal protection clause, we must consider the facts and circumstances behind the law, the interests which the state claims to be protecting, and the interests of those who are disadvantaged by the classification. *Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)."

*Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

In this case, I agree that the standard of review applied by the majority in examining the challenged statute is the correct one. Appellee, James, suffered serious personal injuries when allegedly, he fell while descending steps leading to public transportation. He claims his fall and injuries were caused by the tortious conduct of appellant, Southeastern Pennsylvania Transportation Authority (SEPTA). Appellee has an *important interest*[4] in seeking redress, in the courts, for his injuries. The Act in question (66 P.S. § 2036) erects a special impediment to appellee's access to the courts. The impediment is grounded wholly on the status of the alleged tort-feasor as a transportation authority. Viewing it from the claimant's side, the Act burdens appellee's right to sue for damages based upon his classification as a claimant against SEPTA.

The arbitrary provisions of the Act (66 P.S. § 2036) have the effect of dividing all tort-feasors into classes: (1) private tort-feasors to whom no notice of claim is owed, and (2) governmental-authority tort-feasors to whom notice of claim is owed. Likewise, injured claimants are divided into classes: (1) claimants injured by a private tort-feasor who

---

4. "It is fundamental to our common law system that one may seek redress for every substantial wrong." *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973).

are not required to give notice within six months,[5] and (2) claimants injured by a governmental-authority tort-feasor who must give notice within six months. *See: Turner v. Staggs*, 89 Nev. 230, 510 P.2d 879 (1973), cert. den. 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973); *Reich v. State Highway Dept.*, 386 Mich. 617, 194 N.W.2d 700 (1972).

The purpose of the diverse treatment mandated by the notice of claim provisions has been stated to be:

> [T]o provide the [governmental]-defendant with the opportunity to make timely investigation and avoid the difficulty of defending against stale and fraudulent claims.

*Dubin v. Southeastern Pennsylvania Transportation Authority*, 219 Pa.Super. 476, 281 A.2d 711 (1971). Other reasons have been put forth for the statutory notice requirement:

> "... (2) to discourage unfounded claims; (3) to facilitate prompt settlement; and (4) to allow the municipality to make the necessary reserve in the annual budget."

*O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977). Additionally, it is said that the relatively short notice period allows for quick repairs, thus avoiding further injuries. *See: Hunter v. North Mason School District*, 85 Wash.2d 810, 539 P.2d 845 (1975).

The arbitrary division of tort-feasors into governmental-tort-feasors and private tort-feasors, and the classification of claimants as those with claims against a governmental-tort-feasor and those with claims against a private tort-feasor is unrelated to any recognized purpose of the Act. All of the reasons advanced for the notice requirement are in no way peculiar to a governmental-tort-feasor. Each of the stated reasons has equal vitality when related to private tort-feasors.[6] There is no rational, substantial basis for

**5.** In this class an injured victim has the full period allowed by the Statute of Limitations to bring an action, unencumbered by any notice requirement.

**6.** Most governmental agencies and authorities "possess special investigative resources which make them in most instances better equipped

burdening a victim injured by a governmental-tort-feasor with a special notice requirement which does not apply to one injured by a private tort-feasor.

As did the Supreme Courts of Michigan,[7] Nevada,[8] Washington,[9] and West Virginia[10] in considering notice of claim statutes in their states, I would hold the notice provision of 66 P.S. § 2036 violative of constitutional equal protection guarantees and affirm the order of the Superior Court.

I dissent.

to investigate and defend negligence suits than most private tort-feasors, for whom no special notice privileges are provided by law." *Hunter v. North Mason School District,* 85 Wash.2d 810, 539 P.2d 845 (1975). Further, the desirable effects of discouraging unfounded claims, facilitating prompt settlements, encouraging speedy repairs and budgeting reserves are no less important to private tort-feasors. *Id.*

7. *Reich v. State Highway Department,* 386 Mich. 617, 194 N.W.2d 700 (1972).

8. *Turner v. Staggs,* 89 Nev. 230, 510 P.2d 879 (1973), cert. den. 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973).

9. *Hunter v. North Mason High School,* 85 Wash.2d 810, 539 P.2d 845 (1975).

10. *O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504 (1977).