**Rolf LARSEN, Petitioner**

v.

**STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2011.

Decided May 20, 2011.

---

1. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.616.

Jon Pushinsky, Pittsburgh, for petitioner.

Jill S. Vecchio, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Rolf Larsen (Claimant) petitions for review of an order of the State Employees' Retirement Board (SERB) denying his requests: (1) to use his termination date as his effective date of retirement; and (2) to have the amounts paid to him as unvouchered expense allowances included as compensation and in the calculation of his final average salary. We affirm.

The stipulated facts in this matter are as follows.[1] Claimant's date of birth is August 26, 1934. (SF 2) Claimant became a member of the State Employees' Retirement System (SERS) on January 7, 1974, when he became a Judge for the Court of Common Pleas of Allegheny County. (SF 5) Claimant served as a Justice on the Pennsylvania Supreme Court from the beginning of 1978 through June 3, 1994. (SF 6) Claimant made retirement contributions to SERS during his tenure as a Court of Common Pleas Judge and from his assumption of office as a Justice until June 3, 1994, the date the Court of Judicial Discipline issued an interim order suspending Claimant without pay. (SF 8; 9) Claimant has a total of 22.3138 years of credited service with SERS. (SF 12)

Throughout his service as a Court of Common Pleas Judge and Justice, Claimant received a salary established by law. (SF 34) As a Justice, Claimant received payments for unvouchered expenses each year from 1978 through October 1993. (SF 41)

On September 7, 1979, SERS issued Management Directive 570.8, Amended, which applies to all SERS members, which in part permitted the filing of a conditional retirement application for any involuntarily terminated State employee who wished to file a grievance or take court action regarding his or her dismissal from State employment.[2] (SF 42; 44) By letter dated June 17, 1994, David A. Frankforter with the Administrative Office of Pennsylvania Courts (AOPC), advised Claimant to contact the SERS Regional Counseling Center for the Pittsburgh area and Claimant was provided with the Center's address and phone number. (SF 47) However, Claimant did not personally contact SERS until he did so through counsel in October 2001. (SF

---

1. This opinion includes only the most relevant stipulated findings of fact.

2. Subsection (d) of Management Directive 570.8, as it existed on August 10, 1989 and in June 1994, states "The information detailed above is to be provided by agency retirement counselors to any dismissed or furloughed employe. Employes are to be informed of their rights and obligations regarding actions they may take which affect their retirement accounts. For example, an employe may file a conditional retirement application if he or she wishes to appeal a dismissal or furlough. If the employe wins his or her appeal and is reinstated, the conditional application becomes void. No payments would be made, and no repayments would be necessary. If the employe loses the appeal, the application for retirement becomes effective the day specified on the application." (SF 43).

49) Claimant completed an application for retirement in the SERS Regional Counseling Center for the Pittsburgh area on November 18, 2001, selecting a maximum single life annuity for his monthly benefits. (SF 50) Claimant, through counsel, requested that his retirement application be treated retroactively to June 3, 1994. (SF 52)

After determining that Claimant's pension was not subject to forfeiture, SERS approved Claimant's retirement application but denied, with appeal rights, Claimant's request for retroactive retirement benefits, *inter alia.* (SF 54) By letter of February 11, 2002, SERS provided Claimant with information regarding his retirement account and his initial annuity payment. (SF 55) By letter dated February 13, 2002, Claimant requested information regarding the computation of his monthly retirement benefit. (SF 56) Claimant also, through counsel, filed a timely appeal with regard to the effective date of retirement, as well as the calculation of his final average salary, which did not include the unvouchered expense allowances Claimant received as a Justice. (SF 57) SERS' appeals committee denied Claimant's appeal and Claimant further appealed to SERB. (SF 59; 60)

The following findings were made by SERB. Claimant was not provided with materials typically given to retiring members of the Judiciary when he was terminated from office. It is the policy of SERS' field program not to initiate contact with members; therefore, they did not initiate contact with Claimant following his termination.

A conditional retirement application preserves a member's right to a benefit effective one day after the member terminates if the application is filed within 90 days of termination or to the date the application is filed if it is filed later than 90 days after termination. When a member files a conditional retirement application, he establishes his effective date of retirement and his right to receive benefits retroactive to that effective date, but a benefit is not paid to him until the application is finally exercised, after his termination is deemed to be final. No one from AOPC ever provided Claimant with a conditional retirement application or information regarding Management Directive 570.8. Neither conditional retirement applications nor Management Directive 570.8 is discussed in the SERS member handbook.

Claimant was not aware of the existence of a conditional retirement application until July 2002, when he read about it in SERS' answer to his appeal. Claimant testified that he did not file for retirement benefits because if he did, he would lose standing to appeal any and all present and future removals from office.

The general policy of SERS is to consider compensation as that which was provided in return for services rendered by a State employee. Retirement covered compensation is salary paid to the member. At the time Claimant was a Justice, he received unvouchered expense allowances. Unvouchered expenses were not included with the Justices' salary check but were a separate check provided to reimburse them for business expenses that they incurred in the course of their duties. Justices received two W–2 forms: one for their salary; and one entitled "expense allowance" for their nonvouchered expense monies, including car allowances. The General Assembly legislatively began requiring a vouchered expense plan on July 1, 1994.

SERS' long standing position has been that unvouchered expenses received by the Judiciary are not retirement-covered compensation, but those received by the General Assembly pursuant to the Public

Official Compensation Law[3] (POCL) are retirement covered compensation. This is because the unvouchered expenses received by the General Assembly are considered to constitute money statutorily paid as compensation in lieu of a salary increase in order to constitutionally equate compensation of the members of the General Assembly during the transitional years when salary increases were granted mid-term. These particular legislative expense allowances are the only unvouchered expense allowances that SERS treats as compensation for purposes of the Retirement Code.

Because AOPC believed that unvouchered judicial expenses were not considered compensation by the POCL, AOPC did not report those amounts to SERS and employee and employer contributions were not deducted from those amounts. Unvouchered expenses are not considered compensation by SERS for purposes of determining a pensioner's final average salary calculation.

By opinion dated May 27, 2009, the Hearing Examiner recommended to SERB that Claimant's request for a retroactive effective date of retirement be denied and that his effective date of retirement remain November 19, 2001. The Hearing Examiner further recommended

that SERB deny Claimant's request that his unvouchered expense allowances be included in the calculation of his compensation for purposes of determining his final average salary. Both Claimant and SERS filed exceptions to the Hearing Examiners' opinion.

Upon review, SERB determined that Claimant was first officially removed from office on June 13, 1994, by the Court of Common Pleas of Allegheny County and thus this is his official date of termination. Claimant did not fulfill his statutory duty of completing his retirement application within 90 days of his date of termination in order to establish the first day following his date of termination as his effective date of retirement. Thus, the effective date of Claimant's retirement is the date of his retirement application or November 19, 2001. Unvouchered expense allowances received annually by the Judiciary through line item budget appropriations do not constitute compensation for purposes of calculation of a retiree's final average salary. Finally, SERB determined that Claimant was provided a fair and impartial administrative hearing.

Accordingly, SERB denied Claimant's appeal. This appeal followed.[4] Herein, Claimant raises the following issues for review:[5]

3. Act of September 30, 1983, P.L. 160, *as amended*, 65 P.S. §§ 366.1—366.4. Section 4 of the POCL governs the salaries, expenses and mileage of members of the General Assembly. 65 P.S. § 366.4.

4. Our scope of review is limited to a determination of whether SERB committed an error of law, whether there has been a violation of constitutional rights, or whether necessary factual findings are supported by substantial evidence. *Miller v. State Employes' Retirement System*, 156 Pa.Cmwlth. 83, 626 A.2d 679 (1993).

5. We note that Claimant also raises the issue of whether he was denied a fair administra-

tive hearing. However, Claimant has waived this issue by failing to present any detailed arguments or citation to the record in support thereof in the argument portion of his brief. *See* Pa.R.A.P. 2119; *County of Venango v. Housing Authority of Venango*, 868 A.2d 646 (Pa.Cmwlth.2005); *Van Duser v. Unemployment Compensation Board of Review*, 164 Pa. Cmwlth. 96, 642 A.2d 544 (1994) (Issues not briefed are waived.). Claimant does provide brief argument on this issue in his reply brief wherein he contends that this matter is contained and sufficiently explicated in his initial brief. Unfortunately, Claimant's contention is incorrect. It is this Court's conclusion that this issue is not sufficiently explicated in his

1. Whether SERB erred in refusing to consider Claimant's judicial unvouchered expense income as "compensation" under the State Employees' Retirement Code (Retirement Code),[6] and in excluding said income from the pension related calculation of his final average salary.
2. Whether Claimant is entitled to have his initial termination date serve as his effective retirement date.

## I. UNVOUCHERED EXPENSE ALLOWANCES

In support of the first issue raised, Claimant argues that unvouchered expense income is compensation that should be included in his final average salary. Unvouchered expense payments are remuneration as shown by the relevant statutory language, which strongly suggests a legislative intent to set broad parameters for what constitutes remuneration. Claimant contends that since the General Assembly excluded refunds for expenses, contingency and accountable expense allowances from the definition of remuneration, it is clear that the General Assembly understood those payments to fall within the ambit of the broader term. Claimant argues that SERB erroneously draws a distinction between expense payments and remuneration; however, given the set amount of unvouchered expense payments received by Claimant and the absolute discretion he had over these funds, it is certainly logical to conclude that those payments were and would be considered part and parcel of the compensation received by him for the performance of his judicial duties.

Claimant argues further that if the General Assembly intended that expense payments are not remuneration solely because

they do not represent payment for services, there would be no purpose served by the General Assembly's identification of certain categories of expense payments to be excluded. Claimant contends that if the General Assembly intended to exclude unvouchered expenses, it could have explicitly done so, and since it did not, one must assume that the General Assembly intended for such expenses to be remuneration.

Claimant contends that SERB erroneously equates unvouchered expenses with contingency expense allowances; however, that term is not defined in the Retirement Code. Claimant contends that the record shows that the unvouchered expense payments received by Claimant had no connection to expenses incurred by him; therefore, he did not have to account for such expenses. Thus, Claimant argues, the income Claimant received as unvouchered expenses are no different than the portion of Claimant's compensation that SERB considers salary.

 First, we point out that the restrictions on the types of compensation that may be used in calculating an employee's final average salary serve to ensure the actuarial soundness of the retirement fund by preventing employees from artificially inflating compensation as a means of receiving greater retirement benefits. *Beardsley v. State Employes' Retirement Board,* 691 A.2d 1016, 1019 (Pa.Cmwlth. 1997). In addition, "while [SERB] is not permitted to circumvent the express language of the Code, it must liberally administer the retirement system in favor of the members of the system." *Id.*

 In addressing the issue of whether unvouchered expense allowances are "com-

initial brief. Accordingly, we will not address whether Claimant was denied a fair administrative hearing.

6. 71 Pa.C.S. §§ 5101—5956.

pensation" and therefore should be included in a claimant's final average salary, SERB looked to the definition of compensation as set forth in the Retirement Code and the accompanying regulations. Section 5102 of the Retirement Code defines "COMPENSATION", in relevant part, as: "[p]ickup contributions plus remuneration actually received as a State employee excluding refunds for expenses, contingency and accountable expense allowances, and excluding any severance payments or payments for unused vacation or sick leave." 71 Pa.C.S. § 5102. The regulations, as promulgated by SERB, define "compensation" as "[l]imited to salary or wages received for services performed as an employee, but excluding monies received for bonuses, cash awards or similar emoluments." 4 Pa.Code § 241.1.

SERB interpreted the foregoing provisions as excluding unvouchered expense allowances as part of Claimant's final average salary used to calculate his retirement benefit. Upon review, we conclude that SERB did not err in its interpretation.

It is well settled that "[t]he interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous." *Caso v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 576 Pa. 287, 839 A.2d 219, 221 (2003). Pursuant to Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a), "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." *Public School Employees' Retirement System v. Pennsylvania School Boards Association, Inc.*, 545 Pa. 597, 682 A.2d 291 (1996). In the absence of statutory definitions, statutory words are construed according to their ordinary usage.

*Penn Jersey Advance, Inc. v. Grim*, 599 Pa. 534, 962 A.2d 632 (2009).

■ First, the Retirement Code does not define the term "remuneration." However, our Supreme Court has determined that the general definition of the word "remuneration" is "payment for services performed." *See Allegheny Ludlum Corporation v. Unemployment Compensation Board of Review*, 535 Pa. 125, 129, 634 A.2d 587, 589 (1993). In addition, the pertinent regulation limits "compensation" "to salary or wages received for services performed as an employee." 4 Pa.Code § 241.1. Accordingly, we conclude as did SERB, that the definition of "compensation" is restricted to the money received by a State employee for his or her service to the Commonwealth, as opposed to funds advanced or reimbursed to cover expenses incurred in performing those services.

■ Second, the Retirement Code excludes, *inter alia*, from the definition of "compensation" "refunds for expenses, contingency and accountable expense allowances." Section 5102 of the Retirement Code, 71 Pa.C.S. § 5102. The term "contingency" is not defined in the Retirement Code. However, the dictionary defines "contingency" as "[a]n event that may or may not occur; a possibility. The condition of being dependent on chance; uncertainty." Black's Law Dictionary 315 (7th Ed.1999). Therefore, we agree with SERB that contingency expenses require that money be advanced to a person so that the person has funds available to cover expenses as they are incurred. Moreover, such expenses are clearly not accountable expenses and not meant to be so under the plain language of Section 5102 of the Retirement Code.

In light of the foregoing, our role is to look beyond the label given to Claimant's expense allowance and examine its character. Herein, the fact that the expenses

were unvouchered does not change the fact that Claimant received an expense allowance. The fact that the expenses were unvouchered results in the expenses being more akin to an allowance for contingency expenses. The record supports that Claimant received the unvouchered expense allowance to cover any expenses that he incurred as a Justice and not for services performed as a Justice. Based on the plain language of the Retirement Code, which excludes refunds for contingency expense allowances, the subject unvouchered expense allowance may be characterized as the type of refund for expenses that the General Assembly intended to exclude as compensation pursuant to the Retirement Code.

Accordingly, SERB did not err in its interpretation of the Retirement Code and in determining that the unvouchered expense allowances that Claimant received while serving as Justice of the Pennsylvania Supreme Court are not compensation. Thus, SERS properly excluded the unvouchered expense allowances from the calculation of Claimant's final average salary for retirement purposes.

Next, Claimant argues that the General Assembly provided its members with unvouchered expense allowances in 1983, 1987 and 1995. If SERB had been guided by the plain meaning of the Retirement Code in deciding whether to treat Claimant's unvouchered expense income in the same manner as it did legislative unvouchered expense income, then it would have arrived at the same decision for both. Claimant argues that an unvouchered expense allowance is either remuneration or it is not. SERB's characterization of the General Assembly's unvouchered expense income as *de facto* salary increases because they were equal to the pay increases that legislators would have received but

for the constitutional prohibition against mid-term salary increases, is error.

Claimant contends further that SERB's reasoning creates a subclassification scheme that is not conferred by any statutory authority resulting in the illegal drafting of a new law as it pertains to defining retirement benefits for State employees. The Courts have struck down the midterm enactment of unvouchered expense allowances for the General Assembly where those allowances are actually salary increases. Finally, Claimant argues that SERB's refusal to include Claimant's unvouchered expense income in his final average salary and its disparate treatment of two similarly situation groups of State employees violates his right to equal protection of the law.

■ As previously stated by this Court:

Any lawfully enacted legislation enjoys a presumption of constitutionality which can be overcome only if the challenger establishes by a clear, palpable, and plain demonstration that the statute violates a constitutional provision. *James v. Southeastern Pennsylvania Transp. Auth.*, 505 Pa. 137, 142, 477 A.2d 1302, 1304 (1984) *[citing Milk Control Comm'n v. Battista*, 413 Pa. 652, 659, 198 A.2d 840, 843 (1964) and *Singer v. Sheppard*, 464 Pa. 387, 393, 346 A.2d 897, 900 (1975)*]*. Where the challenge is on equal protection grounds, we must first determine the level of scrutiny which should be applied to the classification at issue. As has repeatedly been noted:

There are three different types of classifications calling for three different standards of judicial review. The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a "rational basis" test. In the second type of cases, where a suspect classification

has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. Finally, in the third type of cases, if "important," though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review.

*James,* 505 Pa. at 145, 477 A.2d at 1305–06 *(citations omitted).* The three-tiered standard for reviewing equal protection claims is the same under both State and federal Constitutions. *Id.* at 144, 477 A.2d at 1305.

*Donahue v. Public School Employees' Retirement System,* 834 A.2d 655, 658–59 (Pa. Cmwlth.2003), *aff'd,* 580 Pa. 14, 858 A.2d 1162 (2004), *cert. denied,* 543 U.S. 1122, 125 S.Ct. 1099, 160 L.Ed.2d 1070 (2005). This Court has further recognized that "the essence of an equal protection claim is that persons in similar circumstances must be treated similarly." *Burns v. Public School Employees' Retirement Board,* 853 A.2d 1146, 1152 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 581 Pa. 701, 864 A.2d 1205 (2004). "[A] state may recognize differences and create classifications so long as all similarly situated persons are treated alike." *Id.*

 The appropriate standard to apply in this matter is the rational basis test. In applying the rational basis test, a two-step analysis is employed. First, the Court must determine whether the challenged statute seeks to promote any legitimate state interest or public value. If so, we then determine whether the legislative classification is reasonably related to accomplishing that articulated state interest. *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corporation),* 584 Pa. 309, 335, 883 A.2d 518, 534 (2005). The

classification need only be directed at the accomplishment of a legitimate governmental interest in a manner which is not arbitrary or unreasonable. *Id.* at 333, 883 A.2d at 532.

Initially, we note that Claimant is not arguing that he is being treated differently than other Justices or members of the Judiciary. Instead, Claimant is arguing that he is being treated differently than members of the General Assembly. In that regard, Claimant first contends that SERB has created an illegal sub-class of State employees by treating the unvouchered expense allowances received by members of the General Assembly as compensation for retirement purposes. We disagree.

 The Retirement Code charges SERS, and ultimately SERB, with the duty and responsibility to determine if monies received by a member constitute compensation for purposes of determining that member's final average salary. The definition of compensation set forth in the Retirement Code applies to all State employees. Section 5102 of the Retirement Code, 71 Pa.C.S. § 5102. Therefore, it would be improper for SERS to differentiate on the basis of whether a member is part of the Judiciary or the General Assembly when a determination is needed as to whether certain payments are compensation. It is proper, however, for SERS to look at the characteristics, and not the label, of any monies received by a member of the Judiciary or the General Assembly separately, and on a case by case basis, to determine whether those monies are "compensation" within the meaning of the Retirement Code.

 As we have previously determined herein, an examination of the characteristics of the monies received by the Justices labeled "unvouchered expense al-

lowances" are not compensation within the meaning of the Retirement Code. SERB's findings in this matter with respect to how SERS determined that the monies labeled "unvouchered expense allowances" that were paid to members of the General Assembly in 1983, 1987 and 1995, were compensation within the meaning of the Retirement Code, reveal that SERS made the determination by examining the POCL. Members of the General Assembly received unvouchered expense allowances pursuant to the specific provisions of the POCL in effect in 1983, 1987 and 1995. Based on the examination of the POCL, SERS concluded that the unvouchered expense allowances provided to the members of the General Assembly were paid as additional compensation. Since the foregoing examination and determination that the unvouchered expense allowances paid to the members of the General Assembly in 1983, 1987, and 1995 constituted compensation for retirement purposes is in keeping with the function of SERS and the provisions of the Retirement Code, there was no creation of an illegal sub-class of State employees.

Claimant also argues that SERB's refusal to include Claimant's unvouchered expense allowance in his final average salary and its disparate treatment of two similarly situated groups of State employees violates his right to equal protection of the law. Again, we disagree.

SERS' duty to determine a member's correct final average salary by ascertaining if certain types of payments constitute compensation certainly promotes a legitimate state or public interest. As previously stated herein, the restrictions on the types of compensation that may be used in calculating an employee's final average salary serve to ensure the actuarial soundness of the retirement fund. *Beardsley.* Since there are restrictions on the types of compensation set forth in the Retirement Code, it is clearly reasonable and necessary for SERS, when needed, to undertake an independent evaluation of whether certain payments constitute compensation to ensure the actuarial soundness of the retirement fund. The fact that such independent examination may result in increasing one group of State employees' final average salary and not another, does not render such examination irrational, arbitrary or unreasonable.

Accordingly, this Court refuses to accept Claimant's premise that SERS should treat every payment labeled an "unvouchered expense allowance" as compensation for retirement purposes without looking beyond the label and examining the characteristics of each payment. In short, Claimant is not being treated differently from any other State employee by the exclusion of the unvouchered expense allowances in the calculation of his final average salary.[7]

## II. RETIREMENT DATE

In support of the second issue raised in this appeal, Claimant argues that SERB erred in not accepting the date of Claimant's termination on June 3, 1994, as his effective date of retirement. Claimant argues further that he did not apply for retirement until November 19, 2001, because he was challenging his terminations and he did not want to lose his standing to pursue those challenges by assuming re-

7. As SERB opined, while "a member of SERS is entitled to have the statute liberally construed in his or her favor, such construction cannot be used to create or grant rights that are not already contained with the four cor- ners of the Retirement Code." SERB Opinion at 56 (citing *Cosgrove v. State Employes' Retirement Board,* 665 A.2d 870, 874 (Pa. Cmwlth.1995)).

tirement status. Claimant contends that SERS withheld information from him regarding the availability of a conditional application for retirement, which would have preserved his initial termination date as his effective retirement date without jeopardizing his standing to challenge his terminations. Claimant contends that this failure to provide Claimant with critical information concerning his retirement rights is a breach of SERS' duty.

Claimant argues that Section 5905(c.1) of the Retirement Code, 71 Pa.C.S. § 5905(c.1), requires SERS to give written notice to all members, whose state service is terminated, of any benefits to which they may be entitled. Claimant states that he was not informed of the mandates of Management Directive 570.8 which provides that an employee may file a conditional retirement application if he wishes to appeal a dismissal. Claimant contends that it was Frankforter's duty, as Claimant's regional retirement counselor, to inform him of Management Directive 570.8; however, Frankforter failed to do so.[8]

With respect to Claimant's official *termination* date, the parties do not dispute that Claimant was initially *suspended* from his position as Justice on June 3, 1994. The record shows that Claimant was first removed as a Justice by the Court of Common Pleas of Allegheny County on June 13, 1994. Therefore, we conclude that SERB did not err by determining that Claimant was officially terminated on June 13, 1994. We now turn to the issue of whether SERB erred by determining that Claimant's official *retirement* date is November 19, 2001.

Section 5905(c.1) of the Retirement Code governs termination of service and provides, in pertinent part, as follows:

In the case of any member terminating State service who is entitled to an annuity and who is not then a disability annuitant, the board shall advise such member in writing of any benefits to which he may be entitled under the provisions of this part and shall have the member prepare, on or before the date of termination of State service, one of the following three forms. . . .

71 Pa.C.S. § 5905(C.1). Section 5907(i) of the Retirement Code provides that "[i]f a member is eligible to receive an annuity and does not file a proper application within [90] days of termination of service, his annuity will become effective as of the date the application is filed with the board or the date designated on the application whichever is later." 71 Pa.C.S. § 5907(i). The Retirement Code defines "effective date of retirement" as:

The first day following the date of termination of service of a member if he has properly filed an application for an annuity within 90 days of such date; in the case of a vestee or a member who does not apply for an annuity within 90 days after termination of service, the date of filing the application for an annuity or the date specified on the application, whichever is later. . . .

Section 5102 of the Retirement Code, 71 Pa.C.S. § 5102.

In this matter, it is undisputed that at the time Claimant was suspended from office without pay on June 3, 1994, he received a letter from David Frankforter, dated June 17, 1994, advising him to contact the SERS Regional Counseling Center for the Pittsburgh area, which included the Counseling Center's address and phone number. It is also undisputed that

---

8. Claimant asserts that since the Retirement Code's change to a statewide counseling center did not go into effect until August 27, 1994, the person responsible for informing Claimant of his retirement rights was Frankforter.

Claimant did not contact the Counseling Center as directed until 2001, and that Claimant did not contact the Counseling Center earlier because he believed that, if he applied for retirement benefits, his standing with regard to the litigation involving his termination as Justice would be affected.

 The plain language of Section 5905(c.1) of the Retirement Code clearly contemplates a situation where the retirement process begins prior to the member's planned or anticipated termination, not after the member has left State service. Since Claimant's termination was unplanned and not anticipated, SERS did not breach its duty by failing to advise Claimant in writing of any benefits to which he may be entitled as stated in Section 5905(c.1).

 In addition, the plain language of the Retirement Code places the ultimate responsibility for preparation of the application for retirement benefits on the member seeking benefits. *See Burns*, 853 A.2d at 1154. Section 5905(c.1) provides that SERS shall "have the member prepare" the application. In this case, Claimant was directed shortly, and within 90 days, after his suspension as a Justice to contact SERS Regional Counseling Center and he consciously chose not to do so. Moreover, Claimant's contention that he did not contact the Regional Counseling Center because he believed that it would affect his standing to pursue reinstatement through the courts if he became "retired" is insufficient to cure his actions. It was Claimant's ultimate responsibility to contact the Regional Counseling Center, particularly when he was provided with the address and phone number by Frankforter via the June 17, 1994 letter. Thus, Claimant was provided with the necessary information within 90 days of his initial suspension in June 1994 to ensure that he had the knowledge to determine whether, when or how he should or should not complete a retirement application at that time. Accordingly, this Court will not hold SERS or SERB responsible for the choices Claimant made, in intentional ignorance, regarding his pending litigation and his retirement benefits.

Notwithstanding the fact that Claimant failed to contact the Regional Counseling Center as directed by Frankforter, Claimant argues further that this Court's decision in *Higgins v. Public School Employes' Retirement System*, 736 A.2d 745 (Pa. Cmwlth.1999), compels the holding that SERS failed to properly counsel and inform him about the conditional retirement application resulting in a loss of benefits. In *Higgins*, we held that the statutory scheme failed the claimant because the school district, for which she was employed, and the retirement board failed to provide timely notice of a 30–day election window for multiple service membership. We stated that "[w]hen governmental entities fail to carry out mandatory statutory duties, however, the result of that failure should not be laid at the feet of a person who is entitled to be the recipient of that duty." *Higgins*, 736 A.2d at 750.

Thus, we must determine if there has been a violation of the statutory retirement scheme. As stated above, SERS did not breach its duty pursuant to Section 5905(c.1) of the Retirement Code. However, Claimant contends that Management Directive 570.8, which provides for a conditional retirement application to be filed by furloughed or terminated employees who are later reinstated, has the force and effect of law; therefore, SERS violated the statutory scheme by failing to inform him in 1994 of the availability of a conditional retirement application.

Regardless of whether Management Directive 570.8 has the force and effect of law,[9] the fact still remains that Claimant failed to contact the Regional Counseling Center as directed by Frankforter's June 17, 1994 letter. This Court recognizes that it is the duty of SERS to provide members with counseling regarding their retirement benefits; however, the member must first contact SERS. Concluding that SERS is responsible for reaching out to every potential retiree who has terminated service, particularly after that member has been directed to contact a SERS' Regional Counseling Center and has consciously chosen not to do so, would impose an unduly burdensome duty on SERS.[10] *Burns.* As found by SERB, SERS cannot terminate a member from his employment; that is the responsibility of the employing agency. SERB Opinion at 15.

In addition, the claimant in *Higgins* was not provided with the proper mandated notice at the time she was hired and became an active member of the Public School Employes' Retirement System. *Higgins,* 736 A.2d at 748. It was only

9. "A management directive is one of several means by which the Governor manages executive branch agencies and employees under his control." *Cutler v. State Civil Service Commission,* 924 A.2d 706, 711 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 596 Pa. 710, 940 A.2d 366 (2007). Management directives announce, *inter alia,* policies and procedures that are relatively permanent and are signed by the Governor or the head of any department, such as SERS, under the Governor's jurisdiction. See 4 Pa.Code § 1.2(2); *Cutler.* As stated by this Court in *Cutler,* 924 A.2d at 711–12 (footnotes omitted):

A management directive is not an administrative regulation with the force and effect of law. *See Tire Jockey Service, Inc. v. Department of Environmental Protection,* 591 Pa. 73, 108, 915 A.2d 1165, 1186 (2007) (explaining that an agency's duly promulgated legislative-type regulation "is valid and binding upon courts as a statute so long as it is (a) adopted within the agency's granted power, (b) issued pursuant to proper procedure, and (c) reasonable."). A management directive is a tool for managing people in the executive branch of state government. It is important to consider the difference between an administrative regulation and a management directive.

In *Shapp v. Butera,* [22 Pa.Cmwlth. 229] 348 A.2d 910 (Pa.Cmwlth.1975), this Court reviewed the different types of executive orders and under what circumstances they could be enforced in a judicial proceeding. We held that a gubernatorial directive "intended for communication with subordinate officials ... for the execution of the duties of the Executive Branch of government" is non-justiciable and not enforceable by court order. *Id.* at 913. Instead, the penalty for noncompliance would be a "demotion, ... reprimand, or a loss of favor." *Id.* By contrast, an executive order that serves to implement a statute can have the force of law and, thus, can be enforced in a court of law. *Id.* However, we also cautioned as follows:

In no event, however, may any executive order be contrary to any constitutional or statutory provision, nor may it reverse, countermand, interfere with, or be contrary to any final decision or order of any court. The Governor's power is to execute the laws and not to create or interpret them. The Legislative Branch of government creates laws, and the Judicial Branch interprets them.

*Id.* at 914 [ ]. Although *Butera* concerned an executive order, its principles have been applied with equal force to management directives. *See, e.g., Wilt v. Department of Revenue,* 62 Pa.Cmwlth. 316, 436 A.2d 713, 714 (1981) (failure of Secretary of Revenue to follow management directive with respect to dismissal of non-civil service employee held to be non-justiciable because it was not issued to implement a statute).

10. We also reject Claimant's argument as speculative that it would have been futile to contact the Regional Counseling Center because Frankforter did not inform him of his retirement options in the June 17, 1994 letter; therefore, he did not know what questions to ask and because SERS had been instructed to refer any inquiries by Claimant to its legal staff.

when she was *contemplating* retirement and before she actually terminated her employment, that she realized that she had not been properly informed when she first became an active member. *Id.* In other words, it was not the retirement board who initially contacted the claimant regarding her retirement options; it was the claimant herself that contacted the retirement board.

■ Moreover, SERS is statutorily required to provide a member handbook to each member that clearly explains a member's rights and obligations. *See* Section 5903(a) of the Retirement Code, 71 Pa.C.S. § 5903(a). This handbook explains the retirement process and specifically advises a member that he or she must apply for retirement benefits within 90 days after termination in order to receive pension benefits beginning the day following the termination date. *See* R.R. at 597b. The handbook further explains that if an application is filed more than 90 calendar days after a member's *termination* date, the pension benefit will be effective on the day the application is filed with SERS or at a later date upon the member's request. *Id.* At a minimum, this notification set forth in the member handbook should have provided Claimant with even more reason to contact SERS as directed by Frankforter's June 17, 1994 letter.

Therefore, we reject Claimant's contention that SERS breached its duty by not advising him of his retirement options in 1994.

Finally, Claimant argues that contrary to SERB's assertion, it may grant equitable relief and determine that his official retirement date is in June 1994 and not November 2001. We disagree.

■ Section 5907(i) of the Retirement Code, 71 Pa.C.S. § 5907(i), clearly provides that if a member fails to file an application for retirement benefits within 90 days of his termination of service, his annuity will become effective as of the date the application is filed or the date designated on the application, whichever is later. SERS simply cannot enlarge the 90 day time period mandated by the Retirement Code,[11] particularly where a claimant knowingly fails to follow a directive to contact a Regional Counseling Center within 90 days of termination of service.

■ In this case, SERB properly determined that Claimant's official termination date was June 13, 1994. To be eligible for an effective date of retirement of June 14, 1994, Claimant should have filed an application for an annuity within 90 days of June 13, 1994 or by September 11, 1994. No application was filed until November 19, 2001; therefore, Claimant's

---

11. *See Barringer v. State Employees' Retirement Board,* 987 A.2d 163, 165 (Pa.Cmwlth. 2009), wherein this Court stated:

[W]e note that the State Employees' Retirement System is a creature of statute. As such, its members enjoy only those rights created by the Retirement Code and none beyond it. *Burris v. State Employees' Retirement Board.,* 745 A.2d 704 (Pa.Cmwlth. 2000); *Bittenbender v. State Employees' Retirement Board,* [154 Pa.Cmwlth. 11] 622 A.2d 403 (Pa.Cmwlth.1992). The retirement system creates a contract between the Commonwealth and its employees and, contracts should be liberally construed to

effectuate the parties' intentions. *Bowers v. State Employes' Retirement Board,* [29 Pa. Cmwlth. 561] 371 A.2d 1040 (Pa.Cmwlth. 1977). Liberal construction of the Retirement Code does not, however, permit the Retirement Board to circumvent the express language of the Code. *Marinucci v. State Employees' Retirement System,* 863 A.2d 43 (Pa.Cmwlth.2004). The Retirement Board lacks authority to grant equitable relief in conflict with the statutory mandates of the Retirement Code, and this Court may not revise the Code to achieve equitable results. *Id.*

effective date of retirement was properly determined by SERB to be November 19, 2001.

Accordingly, SERB's order is affirmed.

Judge PELLEGRINI did not participate in the decision in this case.

### ORDER

AND NOW, this 20th day of May, 2011, the order of the State Employees' Retirement Board entered in the above-captioned matter is affirmed.